The **BOARD OF REGENTS FOR the SOUTHEAST MISSOURI STATE COLLEGE** at the Relation and to the Use of Ralph H. Friedrich, d/b/a Friedrich Sheet Metal, Plaintiff-Respondent,

v.

**MINNER CONSTRUCTION COMPANY, Inc.,** a Corporation, Condaire, Inc., a Corporation, and the Travelers Indemnity Company, a Corporation, Defendants-Appellants.

No. 33254.

St. Louis Court of Appeals.

Missouri.

Sept. 16, 1969.

Motion for Rehearing or to Transfer to Supreme Court Denied Oct. 14, 1969.

Application to Transfer Denied Dec. 8, 1969.

**842**

Spradling, Bradshaw & Drusch, Cape Girardeau, Biggs, Hensley, Curtis & Biggs, St. Louis, Ward Fickie, Clayton, for defendants-appellants.

Vogel & Frye, Cape Girardeau, for plaintiff-respondent.

WOLFE, Presiding Judge.

This action on behalf of Ralph H. Friedrich is on a contract with defendant Condaire, Inc. Friedrich claims that there was due him $15,082.03 under the contract. He also asserts a claim for $329.20 against Minner Construction Company for some repair work done. All of the work and material furnished, on both of the claims asserted, was on the Language Arts Building of the Southeast Missouri State College in Cape Girardeau. This building was constructed under a contract between the Board of Regents of the college and the Minner Construction Company. The Minner Company contracted with Condaire, Inc., to install the heating and air conditioning. Condaire contracted with Friedrich who was in the sheet metal business to do certain work in connection with the installation. The defendant Travelers Indemnity Company, as surety, executed a performance and payment bond in the penal sum of $1,103,600.00 payable to the plaintiff Board of Regents. The trial was to the court and resulted in a judgment against Condaire, Inc., in the sum of $15,030.09 and an order of execution against all defendants for that amount. It also entered judgment against Minner Construction Company for $329.20 and ordered execution against The Travelers Indemnity Company. The defendants appeal.

The total compensation agreed upon by Condaire for the work and materials supplied by Friedrich was $50,395.00. Friedrich had been paid $35,312.97 as the work progressed. He claims in this action that there was a balance of $15,082.03 due him on the contract with Condaire and $395.20 due him from Minner for repair work.

Condaire had disputed the balance claimed by Friedrich as it had back-charged $7,-168.10 against him for certain work that it was obliged to do and which it claimed that Friedrich should have done under his contract. It sent him a check for $7,862.09 which was the difference between the amount claimed by Friedrich and the amount back-charged against him. Friedrich returned the check. Condaire counterclaimed for the amount it had back-charged and there was a judgment against it on the counterclaim. After the judgment against it for $15,030.09, Condaire satisfied that portion of the judgment which was not in dispute and paid into court $7,861.99. This left in controversy only the sum of $7,168.10, the amount of the back-charge, and $395.20 on the judgment against Minner; so there is no question about appellate jurisdiction being in this court, which is limited to $15,000.

This is, in effect, two suits and the first to be considered is Friedrich's claim against Condaire for $7,168.10. This is the amount back-charged by Condaire against Friedrich for the installation by it of finned pipe radiation covers for the baseboard radiation. The defendants contend that under the contract signed by Friedrich this work should have been done by him and that the contract so specifies. The contract offered in evidence by the defendant Condaire provides:

"For the consideration hereinafter named, the Sub-contractor covenants and agrees with said Contractor, as follows:

"FIRST. The Sub-contractor agrees to furnish all material and perform all work necessary to complete the Language Arts Bldg. SEMO State College, Cape Girardeau, Mo. according to the plans and specifications of Buckmueller Whitworth & Assoc., Architects. Specifically Section 15A Paragraph 1–2–9–10–11–12–13–14–21–22–23–24–27–29–28 and including the furnishing of registers, grilles, diffusers, louvers, under floor transite thermaflex tubing for the above

named structure, according to the plans and specifications (details thereof to be furnished as needed) of _____ Architect, and to the full satisfaction of said Architect.

\* \* \* \* \* \*

"The Contractor and the Sub-contractor for themselves, their successors, executors, administrators and assigns, hereby agree to the full performance of the covenants of this agreement."

The contract is signed by both Condaire, Inc. and Ralph H. Friedrich.

The controversy centers on Paragraph 21(b) of Section 15A of the specifications which states:

"Finned pipe radiation shall be wall to wall installation. The cover shall be approximately 10″ high sloping top with integral stamped outlet grille of the inclined blade type, rounded corners and shall be provided with 3″ long heavy cover pieces installed at each partition to provide for dimensional variation. Joints between covers shall be butt joints. The covers shall be made of 14 gauge furniture steel prime coated at the factory. The covers shall be supported from heavy support brackets spaced on 3′ centers and arranged to secure the bottom edge of the cover as well as the top and inclined front. The bracket shall be secured to the masonry walls with expansion bolts set in the masonry. Covers shall be neatly aligned to provide a continuous and unbroken appearance in each room. \* \* \*."

There is no contention that Condaire did not do the work for which it back-charged Friedrich. Friedrich maintained that he only contracted to do sheet metal work and that Paragraph 21(b) was not within that category. Over the objection of the defendant, the trial judge admitted evidence that the work required to be done under Paragraph 21(b) was not sheet metal. There was conflicting evidence as to this and the court evidently concluded that it

was not sheet metal work and upon that conclusion found for Friedrich.

Contrary to his contention that the contract he signed was not the agreement under which he was working, Friedrich wrote a letter to Condaire nine days after he signed the contract. In the letter he noted that the contract as written mistakenly called upon him to perform work under Paragraph 30 of Section 15A and he did not think that should be included. Condaire agreed, and Paragraph 30 was stricken from the contract. He was asked why he did not object to 21(b) if it was not supposed to be in the contract and he said he did not check all of the specifications, he just signed the contract.

The defendant Condaire presented evidence that plaintiff Friedrich was behind the time schedule in his work; that it did the work specified in 21(b) and that the amount back-charged was the reasonable value of the work. The work itself consisted of setting and leveling brackets and placing on them the grilled covers. There was about 1,000 feet of this in the building.

■ Friedrich offered the evidence about sheet metal work on the theory that the contract he signed was ambiguous. No words of the contract are pointed out that do not have a clear meaning. It cannot therefore be said to be ambiguous. The respondent seeks to have us hold that the contract does not reflect the true agreement. In Commerce Trust Co. v. Watts, 360 Mo. 971, 231 S.W.2d 817, 1. c. 820, it is stated:

"* * * That no one may be heard to say that an actual agreement made by the parties is not reflected in their unambiguous written contract, the courts, by the application of the parol evidence rule, have uniformly held that, in the absence of fraud, duress, mistake or mental incapacity, an integrated unambiguous contract may not be varied, and a new and different contract substituted by parol evidence. * * * The parol evidence rule is one of substantive law. It is not a rule of evidence. In a proper case for the application of the rule, even if the parol evidence be received without objection, it must be ignored. The writing itself becomes and is the single and final memorial of the understanding and intention of the parties. * * *"

And again, Warinner v. Nugent, 362 Mo. 233, 240 S.W.2d 941, 1. c. 944, 26 A.L.R.2d 278, the court said:

"The parol evidence rule is not a rule of evidence but 'of substantive law which, when applicable, defines the limits of a contract. It fixes the subject matter for interpretation, though not itself a rule of interpretation.' As applied to contracts the parol evidence rule 'assumes that there has been a legal act consisting of a promise or set of promises; it also assumes the integration of that act in a written memorial. It assumes the proper interpretation of a written memorial according to some standards which the law adopts; and these assumptions being made, excludes from consideration all other elements of the act though they might have been material had there been no integration in a written memorial. In other words, the written memorial, as interpreted by the law, is, for legal purposes, the sole act of the parties in regard to the matter up to the time of integration. * * *'"

A case similar, in all pertinent respects, to the facts and issues before us is National Surety Corp. v. Curators of University of Missouri, 268 F.2d 525. This case was decided by the United States Court of Appeals, Eighth Circuit. The same type of contract was involved there and the sub-contractor sought to show that the work specified in the contract was not sheet metal work. The court held the sub-contractor was obliged to do all of the work described in the paragraph in question and not merely that part which fell within the category of sheet metal.

■ Friedrich contends that the points raised by the appellants were not set out

in their motion for a new trial and therefore they cannot be raised here. We do not find that to be factually true, but if it were it would be of no consequence. No motion for a new trial is necessary for appellate review of a case tried without a jury where the issue reviewed is the propriety of the trial court's decision on the whole record. Russell v. Russell, Mo., 427 S.W.2d 471; Glassburner v. Burtrum, Mo., 418 S.W.2d 119.

 We find that Friedrich was obligated under his contract to do the work specified in it and the trial court erred in holding to the contrary.

As to the claim against Minner Construction Company, Inc. for $329.20, Friedrich testified that after the work had been completed on the building some ductwork had been damaged by flood water. He was called by "someone at the college, I think it was Minner, or one of Minner's men." The caller asked him to repair the damage, which he did. The reasonable value of the repairs was $329.20. He did not know who called him. He sent a bill for the work to Condaire because he thought it should go through them. There is in such testimony no basis for a finding that the work done was ordered by Minner Construction Company. The caller requesting the work was unidentified. It might have been someone from Condaire, or it might have been someone connected with the college, and if it was a call from "one of Minner's men" who was it and by what authority did he act? We need not elaborate further to state that there is no evidence that Minner ordered the work for which Friedrich seeks to charge them. The court erred in entering the judgment against Minner Construction Company.

As stated, that portion of the judgment about which there was never any dispute and which was paid by the defendants is not before us for consideration. We reverse the judgment as to the $7,168.10 remaining, and reverse the judgment for $329.20 against the Minner Construction Company.

BRADY and DOWD, JJ., concur.