Jimmy **ROBERTS**, Appellant,

v.

**BROWNING d/b/a Browning, Inc. of Utah, Appellee.**

No. 79–1298.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 10, 1979.

Dec. 6, 1979.

**530**

Sidney Fortus, Fortus & Anderson, Clayton, for appellant.

Thomas C. Walsh, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for appellee; Michael G. Biggers, St. Louis, Mo., on brief.

Before BRIGHT, Circuit Judge, MARKEY, Chief Judge,[*] and HENLEY, Circuit Judge.

HENLEY, Circuit Judge.

This is an appeal by plaintiff, James or Jimmy Roberts, from an order of the United States District Court for the Eastern District of Missouri granting a summary judgment in favor of the defendant, Browning d/b/a Browning, Inc. of Utah, and dismissing the plaintiff's complaint.[1]

Plaintiff was employed by Browning for some years beginning in October, 1969. He was eventually separated from employment not later than April, 1976. Plaintiff claimed that he was discharged by the defendant because he had prosecuted a claim for workmen's compensation under the Missouri Workmen's Compensation Law, R.S.Mo. § 287.010, et seq., and that his discharge violated R.S.Mo. § 287.780 which makes it unlawful for an employer to discriminate against an employee on account of the latter's having sought or received workmen's compensation benefits. Plaintiff also claimed that in 1977 he demanded a "service letter" from the defendant as provided by R.S.Mo. § 290.140 and that the

---

[*] The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. During the period with which we are concerned the defendant was known as the Browning Arms Co., a manufacturer of firearms and other sporting goods and supplies.

letter that he received did not satisfy the requirements of the statute.[2]

The suit was filed in 1978 in the Circuit Court of Jefferson County, Missouri, where defendant operates a plant. The complaint or "Petition For Damages" was in two counts. In Count I plaintiff set out his claim based on R.S.Mo. § 287.780; in that count plaintiff sought actual damages in the sum of $100,000.00 and punitive damages in the sum of $300,000.00. In Count II plaintiff set out his claim under R.S.Mo. § 290.140. In that count plaintiff asked for nominal compensatory damages in the amount of $1.00 but also asked for punitive damages in the sum of $300,000.00.

The defendant promptly removed the case to the federal district court on the ground of diversity of citizenship with the requisite amount in controversy. In due course the defendant answered and denied liability. In its First Amended Answer the defendant denied that it had discharged plaintiff in violation of Missouri law and denied that the service letter that was given to the plaintiff in September, 1977 did not comply with statutory requirements. The defendant also took issue with the plaintiff on the issue of damages. As an affirmative defense the defendant pleaded accord and satisfaction. As will be seen, that defense was based on a document entitled "Release and Resignation" which the plaintiff had executed in favor of the defendant in April, 1976.

With the case being at issue, and after plaintiff had answered interrogatories propounded by the defendant, the latter moved for summary judgment as provided by Fed. R.Civ.P. 56(b). That motion was stoutly resisted by plaintiff. The motion was submitted to the district court on the pleadings, documentary exhibits, including the affidavit of the plaintiff and of Robert E. Clark, the defendant's local manager at the plant in Arnold, Missouri, copies of the release relied on by the defendant and of the service letter written by the defendant in 1977, a copy of an arbitrator's award in favor of the plaintiff that was rendered in March, 1975, the motion papers, and thorough briefs from both sides.

On March 21, 1979 the district court filed a memorandum opinion granting the defense motion, and on the same day entered an order formally granting summary judgment to the defendant. A post-trial motion for reconsideration filed by plaintiff was denied, and this appeal followed.

The principles that governed the district court in passing on the defendant's motion and that govern this court in reviewing the action of the district court are thoroughly settled in this circuit and need not be explored in detail; nor do they require detailed citations in support of a statement of them. Some of our recent cases include *Starling v. Valmac Industries, Inc.*, 589 F.2d 382 (8th Cir. 1979); *Watts v. Brewer*, 588 F.2d 646 (8th Cir. 1978); *Stifel, Nicolaus & Co. v. Dain, Kalman & Quail, Inc.*, 578 F.2d 1256 (8th Cir. 1978). *See also* the general discussion of Rule 56 that appears, with ample citations, in 10 C. Wright & A. Miller, Federal Practice & Procedure, §§ 2711 *et seq.*

In this case the burden was on the defendant to establish beyond controversy that there was no genuine issue as to any material fact and that the defendant was entitled to judgment as a matter of law. Plaintiff was entitled to have the case viewed in the light most favorable to him and to have the benefit of all inferences favorable to him that might reasonably be drawn from the evidence. Summary judgment is a harsh remedy and should be granted sparingly. On the other hand, courts should not be unreasonably niggardly in its use lest the purpose of the rule, which is to avoid needless trials, be defeated. While a motion for summary judgment

---

2. The statute provides in substance that if an employee who has been in the employment of an employer for at least 90 days separates from employment or is terminated for any reason, the employer upon request must furnish him with a letter setting out the nature, character and duration of the employee's employment and specifying the reason, if any, for his separation or termination.

ordinarily should not be granted if it appears that the position of the party opposing the motion would be supported at trial by substantial evidence, still it must be kept in mind that "substantial evidence" is more than a "mere scintilla." It must be such evidence as a reasonable mind would accept as sufficient to support a conclusion; it must do more than create a mere suspicion of the existence of a fact or state of facts. It must be enough to justify a trial judge in denying a directed verdict for the moving party at the conclusion of a jury trial. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951), and cases cited. Conversely, if a district judge to whom a Rule 56 motion is addressed is satisfied that at the conclusion of a jury trial he would be required to direct a verdict in favor of the moving party, then the granting of the motion is appropriate. *Bellflower v. Pennise*, 548 F.2d 776, 777–78 (8th Cir. 1977); *cf. Windsor v. Bethesda General Hospital*, 523 F.2d 891, 893–94 (8th Cir. 1975).

Returning to this case, it is undisputed that on April 17, 1976 the plaintiff, after negotiations had been had between local manager Clark and the business agent of the labor union to which plaintiff belonged, executed the Release and Resignation that defendant relies upon as an accord and satisfaction. That document recites that in consideration of a payment of $445.60, representing two weeks pay (80 hours), the plaintiff released the defendant from any and all past and future claims arising out of their employment relationship and that plaintiff was voluntarily resigning from his employment by the defendant. It is also undisputed that some days later the defendant mailed to the union business agent a check in the amount of $344.84, representing the net amount due plaintiff after deducting from the gross sum of $445.60 the sum of $100.76 withheld for state and federal taxes. And there is no dispute that the check was ultimately delivered to the plaintiff and was accepted by him and that he cashed it or deposited it in his bank account.

The position of the defendant is that between early March, 1976 and until the settlement postulated by the defendant was agreed upon, there was a genuine dispute between the parties as to plaintiff's employment status; that that dispute was settled by agreement, and that as evidence of the settlement plaintiff executed the document that has been described, that he is bound by it and that by its terms he cannot recover under either of the Missouri statutes on which he relies.

The position of the plaintiff is that he never resigned from the defendant's employ but was discharged by Clark on or about March 8, 1976, primarily because following an accident on defendant's premises plaintiff had applied for and received compensation under the Missouri Workmen's Compensation Law, *supra*, and secondarily because of general hostility between plaintiff and Clark.

As to the money payment that plaintiff received, he says that it was nothing except payment for two weeks vacation pay that he had already earned, and that such a payment would not constitute valid consideration for the release relied on by the defendant.

The defendant does not deny that the facts surrounding plaintiff's employment and status and the conduct of plaintiff, on one hand, and Clark, on the other hand, between September, 1974 and April, 1976 are sharply disputed. Defendant contends, however, that those disputes are immaterial in view of the provisions of the written Release and Resignation executed by plaintiff, and that plaintiff is precluded by the parol evidence rule from establishing his factual theory of the case which evidence, according to the defendant, would vary the terms of the written contract document.

The plaintiff argues that the parol evidence rule is not applicable here, and at least one of his contentions is that the document signed by him is latently ambiguous and that in view of the ambiguity he is entitled to show by parol that there was no "present consideration" for the document

and that he was simply paid money that was already due him from the defendant.[3]

Since this is a diversity case, the substantive rights of the parties are governed by Missouri law, and Missouri, like other jurisdictions, holds that the parol evidence rule is a rule of substantive law and not a rule of evidence. *Warriner v. Nugent*, 362 Mo. 233, 240 S.W.2d 941, 944 (1951); *Board of Regents v. Minner Const. Co.*, 446 S.W.2d 841, 844 (Mo.App.1969); Wigmore on Evidence, 3d ed., § 2400; Williston on Contracts, 3d ed., § 631, p. 955.

From its consideration of the materials before it, the district court came to the conclusion that the parol evidence rule barred the plaintiff from making his case, and it was on that basis that the motion for summary judgment was granted. The district judge evidently thought that the controlling question was whether there was consideration for the release, that the document relied on by the defendant unambiguously showed present consideration, and that plaintiff would not be permitted to prove by parol that the payment mentioned in the document was actually payment for vacation time that plaintiff had earned already.[4]

It does not appear to us that there is any material dispute between the parties as to underlying principles of substantive law. Both sides appear to recognize that a dispute between competent parties may be settled by compromise or by an "accord and satisfaction"; that such a settlement amounts to a contract and is governed by general principles of contract law, including the rule that a contract must be supported by "present" rather than by merely "past" consideration; and that

where the settlement agreement is evidenced by a writing that is complete, clear and unambiguous its terms may not be varied or impeached by parol testimony relating to events or negotiations antedating the written instrument. The parties also seem to be in agreement at least for present purposes that the Release and Resignation signed by plaintiff, if taken at face value, would constitute a good defense to the action of the plaintiff. The area of disagreement is whether the document is to be taken at face value or whether plaintiff is to be permitted to prove by parol that the sum that has been mentioned and that was paid to him was nothing but already earned vacation pay.

As stated, the district court agreed with the defendant. It is now time to look somewhat more closely at the facts of the case, keeping in mind the principle that the record must be viewed in the light most favorable to the plaintiff.

Plaintiff was hired by the defendant on October 1, 1969 as a messenger and as a truck driver; he also did certain work in the defendant's warehouse in Arnold, Jefferson County, Missouri. During the period here pertinent certain employees of the defendant, including plaintiff, were represented for collective bargaining purposes by Teamsters Local Union No. 688, Associated With International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. The business agent of the union was Ron McDermott. During that period there was in force a collective bargaining agreement between the defendant and the union that dealt with, among other things, sick pay for employees and discharges of employees. The agreement evidently contained a provision calling for arbitration

---

**3.** We note at this point that the service letter of September 16, 1977 of which plaintiff complains in the second count of his complaint refers to the alleged resignation of the plaintiff as the reason for his separation from defendant's employ. Count I and Count II of the complaint are closely related, and we think that it is safe to say that if the parol evidence rule would preclude plaintiff from recovering on Count I, it would also preclude him from recovering on Count II.

**4.** Plaintiff apparently does not contend that his signature to the release was obtained by fraud or overreaching, and he does not seriously challenge the statement in Clark's affidavit to the effect that the settlement between the parties was negotiated between Clark and the business agent of the union who presumably was a competent negotiator.

of individual employee grievances if settlement of those grievances could not be achieved at earlier stages by means of negotiations between the company and the union.

Between 1969 and April, 1974 plaintiff appears to have been a satisfactory employee although he did have two "disciplinaries" on his record; one related to a violation of sick leave rules and the other to a refusal on plaintiff's part to obey an order given by his supervisor.

On April 19, 1974, plaintiff sustained an injury while on the defendant's premises and while acting within the scope of his employment. He was off from the date of injury to May 17, 1974 when he returned to work. Plaintiff received workmen's compensation payments with respect to his injury.

Plaintiff worked regularly until August 14 after which he ceased to work claiming continuing disability from his injury. He requested a leave of absence from the defendant. Plaintiff was advised by Clark that he would have to have medical certification as to his condition. Plaintiff indicated that he was to have a medical examination on September 5, 1974 and would supply the necessary information. He did not do so.

By September 19, 1974 Clark had information to the effect that plaintiff had left Missouri and had gone to Ripley, Tennessee where his father-in-law resided; Clark also had information that plaintiff had been driving one of his father-in-law's trucks. With that information at hand, Clark wrote a letter to plaintiff on the date just mentioned and advised him to contact the defendant within five days, and that if he did not do so it would be considered that he had voluntarily terminated his employment. That letter was returned undelivered; it was remailed or one like it was written, and was sent by registered or certified mail, return receipt requested, to plaintiff at a Ripley, Tennessee address. The return receipt was executed and returned and indicated that the letter had been received. Plaintiff stated in his affidavit, however, that his wife had signed for the letter, had put it on a shelf and had forgotten about it temporarily.

In any event, plaintiff contacted Clark on October 1, and was advised that he had been terminated. Plaintiff complained to his local union, and the union submitted a grievance on plaintiff's behalf. That grievance eventually went to arbitration. The arbitrator conducted an evidentiary hearing at which both plaintiff and Clark testified. The arbitrator found that plaintiff's grievance had been timely filed. The arbitrator also found that the conduct of the plaintiff after mid-August, 1974 would have justified his discharge by the defendant but for certain restrictive provisions of the collective bargaining agreement. The arbitrator set aside the discharge of plaintiff and directed that he be put back to work. The decision of the arbitrator was rendered in March, 1975.[5]

On March 12, 1975 Clark wrote a letter to plaintiff tendering him reemployment. On March 17, 1975 plaintiff advised Clark that he was able to do "light work" only, and he submitted a certificate from Dr. L. H. Bowdern of St. Louis, dated March 13, 1975, which was to the effect that plaintiff could do light work but that he should not be required to engage in tasks that required bending, lifting or stooping.

That restriction was not satisfactory to Mr. Clark. He stated in his affidavit that the company had no light work to which plaintiff could be assigned under the provisions of the collective bargaining agreement. Plaintiff in his affidavit controverts that statement; he says that the company did have light work on which he could have been employed, and that most of his work prior to his 1974 injury had been "light." Plaintiff has alleged that he did in fact work for the defendant for a few days in March, 1975 but that he was assigned to

---

5. The facts stated to this point have largely been based on the written opinion of the arbitrator which is part of the record before us. No one seems to quarrel with that opinion. The immediate controversy that brought on this lawsuit did not arise until 1976.

heavy labor that he was not able to perform. While the matter may not be really material, it is not clear to us whether the plaintiff ever actually worked for the defendant after August, 1974.

The matter rested without further developments until early March, 1976 when plaintiff called on Clark and indicated willingness to return to general duty; plaintiff presented a certificate from a Tennessee doctor indicating that plaintiff was physically fit to return to his normal duty. On March 11 Clark wrote plaintiff and advised him that he had been in contact with the defendant's counsel and with the defendant's former and current workmen's compensation insurance carriers. Clark stated in the letter that according to his medical records plaintiff had a 10% disability, and that it would be necessary or at least desirable for plaintiff to obtain from Dr. Bowdern a waiver of the restrictions that have been mentioned. That waiver was never furnished.

There is a very sharp controversy between the plaintiff and the defendant about the nature of the interview between Clark and plaintiff in March, 1976. According to Clark and to judge from his letter to plaintiff, dated March 11, 1976, Clark was considerate of the plaintiff and would have been willing to put him back to work had he been able to obtain a clearance from Dr. Bowdern. According to plaintiff, Clark violently and profanely refused to entertain plaintiff's offer to go back to work and indicated that he had never had any intention of complying with the 1975 ruling of the arbitrator.

At about this time the union against interested itself in the matter and business agent McDermott engaged in negotiations with Clark looking toward a settlement of the dispute. The record contains no affidavit or other material emanating from McDermott. Clark says that after negotiation it was agreed that plaintiff would accept two weeks pay in full settlement of all claims existing or potential against the company and would resign from his employment. Clark stated in his affidavit that he

did not recall that the payment to be made to plaintiff had any relation to vacation pay.

In his memorandum opinion the district judge had this to say, and we quote at some length:

The law is clear that '[a] release is not supported by sufficient consideration unless something of value is received to which the creditor had no previous right.' *Burns v. Northern Pac. Ry. Co.*, 134 F.2d 766, 770 (8th Cir. 1943) (Minnesota law). See also, *Hogue v. National Automotive Parts Ass'n.*, 87 F.Supp. 816 (E.D.Mich. 1949) (federal law); *Maynard v. Durham & Southern Railway Co.*, 365 U.S. 160, 81 S.Ct. 561, 5 L.Ed.2d 486 (1961) (federal law). Thus, plaintiff contends that the release herein is not supported by consideration since the sum received was vacation pay, to which plaintiff was entitled.

Missouri law, however, provides:

. . . when the recital of a consideration in a written contract can be fairly regarded as a mere recital, or a statement of the receipt of money, then such recital may be explained by parol, and the actual consideration for the contract shown even though to do so may apparently contradict the recital in the contract. In this class of cases the recital as to the consideration is regarded in the same light as a receipt for money and may be explained, or even contradicted by parol; but, if the statement in a written contract in relation to the consideration shows upon its face that the expressed consideration is a part of the terms of the contract itself, then that part of the writing stands as any other part, and it cannot be contradicted, added to, nor subtracted from, by parol. *Fox Midwest Theatres, Inc. v. Means*, 221 F.2d 173, 177 (8th Cir. 1955), quoting from *Pile v. Bright*, 156 Mo.App. 301, 137 S.W. 1017, 1018 (1911).

See also *Gunter v. Standard Oil Co. (Ind.)*, 60 F.2d 389 (8th Cir. 1932); *Meyer v. Weber*, 233 Mo.App. 832, 109 S.W.2d 702 (Mo.App.1937); *Ezo v. St. Louis*

*Smelting & Refining Co.*, 87 S.W.2d 1051 (Mo.App.1935).

In view of the language of the release herein, the Court must conclude that the statement as to consideration is a part of the terms of the contract and thus, parol evidence is inadmissible. See *Fox Midwest Theatres, Inc., supra* at 179; *Ezo, supra,* 87 S.W.2d at 1053. Accordingly, defendant's motion for summary judgment will be granted and judgment will be entered in defendant's favor.

 In summary judgment context the ultimate question before the district court was not whether plaintiff had been discharged in violation of Missouri law or whether the later service letter that he requested and received satisfied the requirements of Missouri statutory law. The question was whether the defendant had demonstrated to the requisite degree of certainty that the case presented no genuine issue as to any material fact and that the defendant was entitled to judgment as a matter of law. While Fed.R.Civ.P. 56(e) imposes some duty upon a party opposing a motion for summary judgment to produce materials controverting materials produced by the movant in support of the motion, still it must be kept in mind that the final burden is on the movant to show that he is entitled to summary relief.

Here, the district court by reference to the parol evidence rule, as understood in Missouri, determined that the defendant was entitled to summary relief. That is to say, the district court concluded that the parol evidence rule would prevent the plaintiff from making a submissible case by oral testimony or by oral testimony plus such written evidentiary material as might be available to him.

 In evaluating that determination it should be kept in mind that a federal district court has no discretion to *grant* a motion for summary judgment under Rule 56. However, éven if a district judge feels that summary judgment in a given case is technically proper, sound judicial policy and the proper exercise of judicial discretion may prompt him to *deny* the motion and permit the case to be developed fully at trial. The ultimate legal rights of the movant can always be protected in the course of or even after trial. *See* 10 C. Wright & A. Miller, *supra,* § 2728, pp. 552 *et seq.* A district judge is frequently tempted in these days of crowded dockets to dispose of a case summarily if he feels that the party opposing a motion for summary judgment cannot prevail legally upon trial. However, this court has cautioned that a district judge in order to dispose of a case summarily should not make the case hard by deciding a difficult or doubtful question of law that might not survive factual determinations. *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 211 (8th Cir. 1976).

The release relied on by the defendant recites that in consideration of the payment by Browning to the plaintiff of "Two (2) weeks pay (80 hours)" plaintiff released all of his claims against Browning and resigned from the employ of Browning. Plaintiff contends that the document is latently ambiguous because the reference to two weeks pay could mean either that as consideration for his release and resignation plaintiff was being paid a sum of money equal to the compensation that he would have received for 80 hours work or that the reference could refer to two weeks vacation pay that plaintiff had already earned so that the defendant was not paying him anything that it did not owe him already.

Assuming for a moment that the document signed by plaintiff, standing alone, is not ambiguous, plaintiff's claim brings up the question of whether a latent ambiguity in the document can be established either by parol evidence or by another piece of documentary evidence or by both. The district court did not really address itself to that problem.

For the purpose of discussion, we leave out of consideration for the present the question of the admissibility of parol testimony to show an ambiguity in the release signed by the plaintiff. The release may need to be considered in connection with another item of written evidence now to be mentioned.

The release was signed by plaintiff on April 17, 1976. On April 12, 1976 a check in favor of the plaintiff in the net sum of $344.84 was drawn by the defendant and was mailed to and accepted by plaintiff. That check would appear to be an ordinary payroll check in favor of the plaintiff and it contains no statement of the nature of the payment. However, the record contains a copy of what appears to have been the defendant's office record relating to the check just described. That record recites that as of the date in question plaintiff had "regular earnings" amounting to $445.60, that those earnings were subject to tax deductions, including F.I.C.A. tax, amounting to $100.76, and that plaintiff was entitled to a net payment of $344.84, the amount of the check. Those figures are followed by the notation "2 Wks. Vacation Pay for Resignation."

The problem is complicated by the fact that in 1975 the arbitrator found that when plaintiff was terminated initially on October 1, 1974 he had accrued vacation time amounting to two weeks, that he requested payment for that time, and that he was paid. As has been seen, the arbitrator ordered that plaintiff be put back to work, and regardless of whether he actually worked or not, his employee status and employee rights may have been somewhat uncertain from October, 1974 down to his "resignation" in April, 1976.

The overall records of the defendant considered in connection with pertinent provisions of the collective bargaining agreement ought to establish plaintiff's status as an employee at various times and plaintiff's entitlement, or lack of it, to compensation for vacation time, if any, accrued after October 1, 1974. Those records were not before the district court, nor was a copy of the collective bargaining agreement before that court. Additionally, the record is bare of any evidentiary explanation of the reference to "2 Wks. Vacation Pay" in the defendant's records. Still further, the record does not contain any evidence from the union business agent as to the nature of the settlement that he and Mr. Clark worked out in connection with plaintiff's 1976 complaint.

On this record, which we deem to be at least somewhat incomplete and unsatisfactory, we have come to the conclusion that as a matter of procedure the district court erred in granting the defense motion for summary judgment. Accordingly, we reverse and remand the case for trial. The reversal extends to both Count I and Count II of the complaint.[6]

Our trouble with the ruling of the district judge goes beyond the parol evidence rule. From the materials of record that we have read, we think that it may be doubtful that upon trial the plaintiff, either hampered or unhampered by the rule in question, will be able to prevail against the defendant, and he may not be able to make a submissible case on either count of his complaint. We think, however, that he ought to have a chance to try, and, of course, at the trial the burden of persuasion will be upon him and not upon the defendant.

That there may be no mistake about the matter, we do not hold at this time that the trial judge misinterpreted the parol evidence rule or that ultimately he misapplied it to this particular case. The question of the meaning and applicability of the rule will be open for further consideration upon trial.

Reversed and remanded.

BRIGHT, Circuit Judge, concurring:

I concur in the remand. I do not believe that the district court correctly applied the parol evidence rule in granting summary judgment.

---

6. *See* n. 3., *supra*. The district court did not specifically discuss Count II, as such.