**LOS ANGELES MEMORIAL COLISEUM COMMISSION, Plaintiff,**

v.

**NATIONAL FOOTBALL LEAGUE, an unincorporated association, et al., Defendants.**

**OAKLAND RAIDERS, LTD., Cross-Claimant,**

v.

**NATIONAL FOOTBALL LEAGUE, an unincorporated association, et al., Cross-Defendants.**

No. 78–3523–HP.

United States District Court, C. D. California.

July 24, 1981.

Blecher, Collins & Hoecker, Maxwell M. Blecher, Howard F. Daniels, M. Brian McMahon, Los Angeles, Cal., for plaintiff, Los Angeles Memorial Coliseum Commission.

O'Melveny & Myers, Patrick Lynch, Clark Waddoups, Los Angeles, Cal., Covington & Burling, Hamilton Carothers, Paul J. Tagliabue, Washington, D. C., for National Football League defendants.

Nelson, Ritchie & Gill, Rodney E. Nelson, Richard G. Ritchie, Los Angeles, Cal., Cotchett, Dyer & Illston, Joseph W. Cotchett, Susan Illston, Rand N. White, San Mateo, Cal., for defendants Los Angeles Rams Football Co. and Georgia Rosenbloom Frontiere.

Alioto & Alioto, Joseph L. Alioto, San Francisco, Cal., Lasky, Haas, Cohler & Munter, Moses Lasky, San Francisco, Cal., for cross-claimant Oakland Raiders, Ltd.

Crosby, Heafey, Roach & May, Edwin A. Heafey, Timothy J. Murphy, Oakland, Cal., for intervenors, Oakland-Alameda County Coliseum.

Flint & MacKay, Michael K. Inglis, Robert F. Kull, Frank Gooch, III, Richard Gilcrest, Los Angeles, Cal., for Melvin Durslag and Scot J. Paltrow.

## MEMORANDUM AND ORDER GRANTING DIRECTED VERDICT FOR PLAINTIFF AND CROSS–COMPLAINANT ON SINGLE ENTITY ISSUE

PREGERSON, Circuit Judge.

This matter is before the court on cross-motions filed, pursuant to Fed.R.Civ.P. 50(a), by the plaintiff Los Angeles Memorial Coliseum Commission, the cross-claimant Oakland Raiders, and the NFL defendants, seeking entry of a directed verdict with respect to the defendants' contention that the NFL is a single economic entity for purposes of this lawsuit and hence cannot as a matter of law have violated section 1 of the Sherman Act. Having studied the parties' briefs and heard the oral argument of counsel on July 24, 1981, the court concludes that the motions of the Coliseum Commission and the Raiders should be granted and that of the NFL denied.

■ The Los Angeles Memorial Coliseum Commission originally moved before trial for partial summary judgment on the single entity issue. The court denied that motion because it appeared that proper resolution of the issue could well depend on the factual evidence adduced at the trial. Because summary judgment is proper only when it is quite clear what the truth is, *Poller v. CBS*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962), a district court may properly deny summary judgment even where it would be technically proper, so that the case may be fully developed at trial. *Roberts v. Browning*, 610 F.2d 528, 536 (8th Cir. 1979).

■ That development has now occurred, and it is apparent that there are no genuine issues of material fact concerning the single entity question. The parties' disagreement concerns the legal effect to be given to the undisputed facts. The question is a close one, and the court has benefitted greatly from the briefs and oral arguments of the parties. Careful consideration of the legal arguments put forward by the Coliseum and by the NFL have convinced this court that the undisputed facts preclude treating the NFL as a single entity for purposes of this lawsuit.

On its face, the NFL certainly appears to be an association of separate business entities rather than one single enterprise. The twenty-eight member clubs are separate legal entities—some corporations, some partnerships, and some sole proprietorships. No two clubs have a common owner. The clubs share a large part, but not all, of their revenues. They do not share their profits or losses. They are managed independently, each making its own decisions concerning ticket prices, player acquisitions and salaries, the hiring of coaches and administrators, and the terms of their stadium leases. They do not exchange or share their accounting books and records.

The Supreme Court has consistently rejected the single-entity argument in circumstances more favorable to that argument than those presented in this case. Firms with a high degree of common ownership have been held separate for Sherman Act purposes. *See Timken Roller Bearing Co. v. United States*, 341 U.S. 593, 597–98, 71 S.Ct. 971, 974, 95 L.Ed. 1199 (1951); *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc.*, 340 U.S. 211, 215, 71 S.Ct. 259, 261, 95 L.Ed. 219 (1951); *United States v. Yellow Cab Co.*, 332 U.S. 218, 227–28, 67 S.Ct. 1560, 1565, 91 L.Ed. 2010 (1947). Indeed, even a parent corporation and its subsidiary have been held separate entities in a Sherman Act context: since they had "availed themselves of the privilege of doing business through separate corporations, the fact of common ownership could not save them from any of the obligations that the law imposes on separate entities." *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 141–42, 88 S.Ct. 1981, 1985–86, 20 L.Ed.2d 982 (1968).

The Ninth Circuit has taken a similarly unreceptive view of single-entity claims, as demonstrated by *Knutson v. Daily Review,*

*Inc.*, 548 F.2d 795 (9th Cir. 1976), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2977, 53 L.Ed.2d 1094 (1977). The defendants there were two newspaper-publishing corporations, one a wholly-owned subsidiary of the other. The Ninth Circuit was reluctant to characterize these firms as a single entity for Sherman Act purposes, stating only (in dictum) that they were "[a]rguably" one enterprise. Yet not only were the two firms parent and subsidiary, but one individual had control of the parent, was president of both corporations, and published all of both companies' newspapers. Moreover, the firms shared many key personnel, their newspapers exhibited numerous common features, and the two companies did not compete. If all these features together were insufficient to establish a single enterprise, it is difficult to see how the NFL can constitute a single entity when it possesses *none* of those features.[1]

The League argues, however, that the unitary nature of the product it creates—NFL football—necessarily implies that it is a single entity. "[T]he economic substance is that of a single firm selling a single product involving a necessary contribution from each member." *NFL Opposition* at 3. This argument suffers from several defects.

In the first place, the argument, if valid, would prove too much. If the NFL must be treated as a single entity in this lawsuit simply because all its teams must cooperate to produce the League product, the NFL should be just as much a single entity—and hence just as incapable of violating section 1 of the Sherman Act—in cases challenging League restrictions on the acquisition of players. Yet such League rules have repeatedly been found to violate section 1. *Smith v. Pro Football, Inc.*, 593 F.2d 1173 (D.C.Cir.1978); *Mackey v. NFL*, 543 F.2d 606 (8th Cir. 1976), *cert. dismissed*, 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977); *Kapp v. NFL*, 390 F.Supp. 73 (N.D.Cal.1974), *aff'd on other grounds*, 586 F.2d 644 (9th Cir. 1978).[2]

Secondly, organizations whose product is just as unitary as the NFL's and requires the same kind of cooperation from the organization's members, have been found to violate section 1 of the Sherman Act. The clearest instance is *Associated Press v. United States*, 326 U.S. 1, 65 S.Ct. 1416, 89 L.Ed. 2013 (1945), where Associated Press bylaws aimed at preventing competitors of existing members from joining the association were held unlawful. Associated Press was an incorporated membership association whose members were newspapers. It gathered and distributed "news which [its] member papers cannot collect single-handed, and which requires their pooled resources." *Id.* at 26 (Frankfurter, J., concurring). This was a product or service distinct from that of the member publishers, and one requiring the cooperation of all the members, none of whom had the facilities or resources to produce AP's stream of worldwide news. Yet the Court had no trouble finding AP's anticompetitive bylaws a restraint of trade.[3] Likewise, in *Silver v.*

---

1. The NFL is not the "parent" of any league member, nor do any two clubs have a common owner. The clubs do not share key operational personnel. And the NFL itself has conceded that "the existence of actual or potential inter-club competition in certain areas is not disputed." *NFL's Opposition to Motion for Partial Summary Judgment*, filed February 20, 1981 [hereinafter *NFL Opposition*], at 29.

2. The NFL argues that the player cases are distinguishable because they challenged NFL conduct in a different market—the market for player services, rather than the market in which NFL football is sold. "In the player market . . . each club had the capacity to employ players without necessarily involving other clubs in such contracts." *NFL Opposition* at

39. The distinction is unconvincing. Each club likewise has the capacity to lease a stadium without involving the other clubs in its contract. Of course, the other clubs will be "involved" in the sense that they will have to play in the leased stadium. But they are similarly "involved" when one club employs a player in the sense that they will have to play against that player. In short, players no less than stadiums are a factor in producing professional football, and if the nature of professional football makes its producer, the NFL, a single entity, that conclusion would apply as much in the player market as in the stadium market.

3. *See also United States v. General Motors Corp.*, 121 F.2d 376 (7th Cir.), *cert. denied*, 314 U.S. 618, 62 S.Ct. 105, 86 L.Ed. 497 (1941),

*New York Stock Exchange,* 373 U.S. 341, 365, 83 S.Ct. 1246, 1261, 10 L.Ed.2d 389 (1963), the Court held that the Exchange had violated section 1 of the Sherman Act. Yet the Exchange "perform[ed] an important function" by "serv[ing] . . . as an indispensable mechanism through which corporate securities can be bought and sold" —a function that none of its individual broker-members could perform on its own. *Id.* at 349, 83 S.Ct. at 1253.[4]

A third problem with the NFL's argument is that it seems to rest on a false premise—that the individual NFL clubs are not separate business entities whose products have an independent value. The League may be correct when it characterizes its member clubs as "[e]ntities which have capacity to be competitors *only* when acting jointly with members of a common enterprise." *NFL Brief on Cross-Motions for Directed Verdict re Single Entity,* filed July 23, 1981 [hereinafter *NFL Brief*], at 21. But this means only that each club must act jointly with *some* other teams in *some* cooperative framework in order to produce football games. It does not show that each club can produce football games only as an *NFL* member. Indeed, many of the current NFL members—including plaintiff Raiders—previously operated as members of a rival football league. There is no conceptual reason why any NFL team could not decide to pull out and join a new league.[5] Thus, although the Raiders can create a product only in collaboration with other teams, it does not follow that they "have no capacity to be competitors separate and apart from their membership in the National Football League." *NFL Brief* at 29. Indeed, sports fans quite often wish to spend their money on the games of a particular team, not simply on "NFL football," "NBA basketball," or the like.[6]

Besides stressing its allegedly unitary product, the NFL relies principally on *North American Soccer League v. NFL,* 505 F.Supp. 659 (S.D.N.Y.1980), and *San Francisco Seals, Ltd. v. National Hockey League,* 379 F.Supp. 966 (C.D.Cal.1974). But these cases do not help the League in this lawsuit, for they arose in far different

affirming the conviction of four corporations for violating section 1 of the Sherman Act. The defendants were GM, its sales and financing subsidiaries GMSC and GM, and a subsidiary of GMAC. The defendants had argued that they all directed their operations "toward one end, the manufacture and sale of General Motors automobiles," *id.* at 384, and that GMAC and its subsidiary were thus merely parts of one common enterprise engaged in the unitary business of making and selling GM cars. The court rejected this defense. *Id.* at 404.

4. The NFL would distinguish *Associated Press* and *Silver* as involving "organizations made up of firms, each of which were self-contained competitors separate and independent of their membership in the umbrella cooperative," unlike the NFL's member clubs. *NFL Brief* at 22. This is not, in the court's view, a "distinction of substance" as the NFL believes. *Id.* at 23. As discussed below, any individual NFL team could, in theory, withdraw from the NFL and join or found a new league. A team could even withdraw and try to present non-league exhibition games, as the Harlem Globetrotters do. Such a venture might be almost certain to fail—but then so would a stock broker who decided to quit the New York Stock Exchange and operate without a seat on any exchange.

5. The NFL might insist that although an individual club could secede from the League and continue to take part in producing football games, it would not be producing *NFL football.* But that is a mere tautology and in no way shows that the League's product has a special unitary quality. Even the most blatant coalition of competing enterprises, charged with a Sherman Act violation, could argue that no other entity except the coalition itself could produce a "coalition product": this would not mean that every such coalition must be considered a single business entity.

6. For this reason, the NFL's analogy with *Evans v. S. S. Kresge Co.,* 544 F.2d 1184 (3d Cir. 1976), is unconvincing. *NFL Brief* at 19–20. That case involved a retailer, Hempfield, who operated the grocery departments of a number of defendant's K-Mart stores. The court found an absence of competition, since from a customer's viewpoint, "whether the . . . item was purchased from Kresge or from Hempfield, it was as if the item had been offered for sale by Kresge alone, but at two different locations in its K-Mart establishment." 544 F.2d at 1193. In our case, by contrast, few football fans would regard a Raiders game and, say, a Jets game as merely "NFL football" dispensed at different locations.

contexts. The *North American Soccer League* case arose in the very different setting of a clash between two separate professional sports leagues, and Judge Haight specifically noted that the single entity defense "fails where two member teams would compete in the same geographical area for sports' fans dollars, and league restraint of that competition damages a stadium operator"—the precise situation alleged here. 505 F.Supp. at 677. *San Francisco Seals* turned on a finding that denial of the Seals's proposed move to Vancouver had no anticompetitive effect. That finding cannot automatically be transferred to this case, because the Seals, unlike the Raiders here, were not being prevented from moving into another team's home territory.

For the foregoing reasons, the court concludes that the NFL's member teams should be treated as separate business enterprises for purposes of this lawsuit, rather than as components of a single business entity. The NFL's arguments are by no means without force if marshalled in an attempt to demonstrate that the competitive activity of the NFL's teams presupposes a degree of mutual cooperation perhaps unique to the world of professional sports. But such unique features are relevant in weighing the reasonableness of the restraint at issue in this case—a task for the jury—and do not suffice to exempt that restraint from antitrust scrutiny altogether by establishing a single entity defense.

THEREFORE, IT IS ORDERED that the motions of the Coliseum Commission and the Raiders for directed verdict on the single entity issue be granted, and the NFL's motion be denied.

The Clerk of the Court is directed to serve copies of this order by United States mail upon the attorneys of record appearing for the parties herein.