## MERCANTILE BANK OF KANSAS CITY, et al., Plaintiffs,

v.

## UNITED STATES of America, Defendant.

### No. 90–0781–CV–W–9.

United States District Court,
W.D. Missouri,
Western Division.

Aug. 11, 1994.

See also, 856 F.Supp. 1355.

Harry B. Wilson, Husch & Eppenberger, St. Louis, MO, Ron R. Morgan, Husch & Eppenberger, and David A. Vorbeck, Kansas City, MO, for Mercantile Bank of Kansas City, James P. Goetz and William P. Messer.

Dennis M. Duffy, Dept. of Justice, Tax Div., Washington, DC, for the U.S.

## ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

BARTLETT, District Judge.

Plaintiffs, Mercantile Bank of Kansas City, James P. Goetz and William P. Messer, moved for summary judgment on their Complaint and on Counts I and II of defendant's Counterclaim. Defendant moved for partial summary judgment on plaintiffs' Complaint, and Counts I and II of the Counterclaim. On June 21, 1994, I issued an order granting plaintiffs' Motion for Summary Judgment on their Complaint and on Count I of defendant's Counterclaim. The cross-Motions for Summary Judgment on Count II of the Counterclaim are now ready to be ruled.

In Count II of the Counterclaim, defendant seeks a judgment under 26 U.S.C. § 3505(b) against plaintiffs for supplying funds to pay wages knowing that federal employment taxes were not going to be paid.

In its motion for partial summary judgment on Count II, defendant seeks to establish that as a matter of law the bank's practice of permitting Manley use of uncollected funds, otherwise known as same day availability of deposits, is "supplying funds" within the meaning of 26 U.S.C. § 3505(b).

Plaintiffs contend that the practice of permitting same day availability of deposits is not supplying funds within the meaning of 26 U.S.C. § 3505(b) because: 1) as a matter of commercial law and practice drawing against uncollected funds is not considered to be equivalent to a loan; 2) the legislative history and regulations to § 3505 make it clear that the section was aimed at lenders, sureties or similar persons with no suggestion that the statute was intended to cover banks who allow their customers same day availability; and 3) the government's position that the term "supplies funds" includes same day availability raises serious conflicts with the stated goals and objectives of Congress in passing the Expedited Funds Availability Act of 1987.

### I. Undisputed Facts

For the purposes of this summary judgment motion, the parties have agreed to the following facts:

Manley Truck Lines, Inc. was a Kansas City based trucking firm that operated throughout the midwest and southwest and employed several hundred people. Manley was part of a group of companies whose parent company was Overland Enterprises, Inc. Both Manley and Overland were owned and controlled by Gene Scott, who died in 1989.

In 1986 and 1987, due to financial difficulties, Manley often failed to remit withheld payroll taxes to the United States as required by law. The Internal Revenue Service intervened in mid–1986 and some unpaid taxes were collected, but a deficiency of over $1,000,000 remains.

Mercantile Bank and the Overland Companies had a bank/customer relationship from the late 1970's or early 1980's. Manley maintained a demand deposit (checking) account at Mercantile, as did each of the Overland subsidiaries. Manley's checking account at Mercantile was a commercial checking account. All of Manley's payroll checks were issued from this account.

Goetz was the loan officer at Mercantile who had day to day responsibility for reviewing the various bank accounts of the Overland companies. Goetz was supervised by Messer who was a senior vice-president at Mercantile.

Mercantile gave Manley "same day availability," or instant credit on checks deposited in the commercial checking account. "Same day availability" is sometimes described as drawing against uncollected funds, because the bank is giving credit for a deposited item for which the bank has not yet collected funds through the various inter-bank clearing houses. Mercantile charged Manley a service charge for the same day availability of uncollected funds. The service charge was calculated on the basis of a floating interest rate.

In the fall of 1986, Manley had cash flow problems. Mercantile learned that checks drawn on Manley's accounts at other banks which had been deposited in Manley's Mercantile account were bouncing on occasion. Mercantile threatened to discontinue same day availability. The bank did not follow through on the threat, due to fear of a lender-liability suit.

The parties agree that the precise issue raised by the cross motions for summary judgment on the § 3505(b) claim is whether the term "supplies funds" as used in the statute includes Mercantile's practice of allowing Manley same day availability to deposits in its checking account. *See* Plaintiff's Response and Reply Brief filed June 28, 1993. Document Number 83, p. 13.

II. *Standard for Summary Judgment*

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.,*

398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States,* 600 F.2d 725, 727–28 (8th Cir.), *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning,* 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter,* 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986); *see also City of Mt. Pleasant v. Associated Electric Cooperative, Inc.,* 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or. other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* at 249, 106 S.Ct. at 2511. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted).

The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Anderson v. Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2511. Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 251, 106 S.Ct. at 2512.

### III. *Discussion*

Title 26, § 3505, provides a method by which the United States can hold third parties liable for an employer's failure to remit employment taxes withheld from employees' wages. Section 3505(b) states:

Personal Liability Where Funds are Supplied. If a lender, surety, or other person supplies funds to or for the account of an employer for the specific purpose of paying wages of the employees of such employer, with actual notice or knowledge (within the meaning of § 6323(i)(1)) that such employer does not intend to or will not be able to make timely payment or deposit of the amounts of tax required by this subtitle to be deducted and withheld by such employer from such wages, such lender, surety, or other person shall be liable in his own person and estate to the United States in sum equal to the taxes (together with interest) which are not paid over to the United States by such employer with respect to such wages. However, the liability of such lender, surety, or other person shall be limited to an amount equal to 25 percent of the amount so supplied to or for

the account of such employer for such purpose.

The term "supplies funds" is not defined in the statute. "When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning." *Smith v. United States,* —— U.S. ——, ——, 113 S.Ct. 2050, 2053, 124 L.Ed.2d 138 (1993). "In the search for statutory meaning, we give non technical words and phrases their ordinary meaning." *Id.* (citation omitted). Webster's Third New International Dictionary (1981) defines "supply" in pertinent part: "to satisfy a need or desire for: provide or furnish with: bring up or make available a quantity of...." The word "funds" is defined in pertinent part as: "available pecuniary resources ordinarily including cash and negotiable paper that can be converted to cash at any time without loss ..." *Id.* Thus, from the ordinary meaning of the words in the context of 3505(b), "supplies funds" means to furnish with available pecuniary resources.

In Plaintiffs' first and second arguments, they assert that the term "supplies funds" is equivalent to the word "loan." Plaintiffs argue that the term "supplies funds" was used instead of the word "loan" because the statute is worded to apply not only to lenders, but also to sureties and other similar persons. Because sureties do not engage in loan making, plaintiffs assert that the word "loan" could not be used. Based on plaintiffs' conclusion that § 3505(b) is restricted to people making loans (and sureties), plaintiffs argue that when a bank grants same day availability the bank is not making a loan and therefore § 3505(b) does not apply. Plaintiffs cite *United States v. Western Contracting Corp.,* 341 F.2d 383 (8th Cir.1965), Internal Revenue Ruling 79–38, 1979–1 C.B. 406, and a bulletin from the Comptroller of the Currency, Administrator of National Banks, 1 Fed.Banking L.Rep. (CCH) ¶ 6215, for the proposition that permitting a customer to draw checks against uncollected funds is not a loan.

Contrary to plaintiffs' argument, § 3505(b) is not restricted to lenders and to sureties. Section 3505(b) also applies to any "other person" who "supplies funds." Had Con-

gress wished to restrict liability under § 3505(b) to people who make loans and to payments by sureties, Congress would not have included "other person."

Plaintiffs argue that the rule of *ejusdem generis* prevents the term "other person" from broadening the meaning of the statute further than to an entity similar to a lender or surety. Plaintiffs also refer to Senate Report No. 1708 at 892, U.S.Code Cong. & Admin.News 1966, p. 3722, part of the legislative history of 3505(b), to support their interpretation that the term "other person" includes only those persons similar to a lender or surety.

The rule of *ejusdem generis* has been defined as follows: "where general words follow an enumeration of specific terms, the general words are read to apply only to other items like those specifically enumerated." *Garcia v. United States,* 469 U.S. 70, 74, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984) (citations omitted). The rule of *ejusdem generis,* however, "is only an instrumentality for ascertaining the correct meaning of words when there is uncertainty." *Id.* Here, there is no uncertainty when the ordinary meaning of "other person" is used. Congress intended § 3505(b) to apply to anyone who supplies funds with the required knowledge of the use to which the funds will be put.

Even if the plaintiffs' restrictive interpretation of "other person" were accepted, a bank which permits a customer to draw checks on uncollected funds is acting similar to a lender. Mercantile Bank gave Manley access to funds that would not otherwise have been available in exchange for a service charge based on a floating rate of interest on the uncollected funds. *See* Exhibit 79, Mercantile Bank Analysis Statements of Manley Fund Account No. 09–624–8. (One of the entries on each statement from December 1985 through November 1986 is "Use of Uncollected Funds". For each month this entry is followed by an interest percent *e.g.,* the December 1985 Statement reads "Use of Uncollected Funds 9½%.")

Both the Eighth Circuit Court of Appeals and the Comptroller of the Currency have recognized that permitting a customer access to uncollected funds is extending credit, an act similar to making a loan. In *United States v. Western Contracting Corp.,* 341 F.2d 383 (8th Cir.1965), a case applying Nebraska law, a bank paid checks for construction material and labor before checks which had been deposited in the customer's account cleared. When a loss resulted, the bank attempted to recover on its customer's construction performance bond. The court rejected plaintiff's effort to subrogate itself to the rights of the laborers and materialmen who had been paid by the checks paid from uncollected funds. In its analysis the court stated "the Bank in paying the checks was acting as a volunteer. The Bank was under no obligation *to extend credit* to [their customer] by permitting [their customer] to draw checks upon uncollected deposits." *Id.* (emphasis added).

In addition, the Office of Comptroller of the Currency has stated that "when a bank credits a customer's account for the amount of an uncollected item without placing a hold on the account, the bank has given the customer control over bank funds. Essentially, the transaction is the equivalent of crediting a customer's account with the proceeds of a loan in the amount of the uncollected item." Interpretative Letter No. 555, July 27, 1987. Also, the Comptrollers Handbook for National Bank Examiners, Deposit Accounts § 301.1 is referenced in this Interpretive Letter as follows: " 'a bank assumes risk by paying against uncollected funds, thereby creating unsecured extensions of credit. ....' "

Thus, even if I assume that "other person" is restricted to persons who are acting similar to lenders making loans, Mercantile, by extending credit, acted similar to a lender. Therefore, when Mercantile extended credit to Manley by allowing Manley same day availability on deposits Mercantile became an "other person" under § 3505(b).

Plaintiffs also assert that because Manley had a property interest in the funds at the time of deposit, Mercantile did not loan money to Manley because Manley had an ownership interest in the funds. Plaintiffs argue, using the relation back doctrine, that "when a bank makes funds available against a de-

posited check which subsequently clears, an exchange of equivalent value has taken place *at the time the deposit was made,* and no loan or advance has occurred." (emphasis in original). This argument is not persuasive. Even though Manley may have had an ownership interest in the uncollected checks when deposited and even though when the checks were paid payment related back to the time of deposit, Mercantile and Manley recognized that Manley was not entitled to immediate access to the funds. Mercantile agreed to give Manley immediate access to its deposits in exchange for the payment of a service charge calculated on the basis of a floating interest rate. Stipulated Fact ¶ 57; Joint Exhibit No. 79. Essentially, Mercantile granted Manley access to money before Mercantile was obligated to do so in exchange for a charge. Therefore, Mercantile extended credit.

Plaintiffs' final argument is that if "supplies funds" is interpreted to include providing same day availability of deposited funds it would raise "serious conflicts with the stated goals and objectives of Congress in passing the Expedited Funds Act Availability Act of 1987." I assume that plaintiffs' argument is that if Congress intended to hold banks liable under § 3505(b) for permitting same day availability of deposits, it would not have passed the Expedited Funds Act requiring banks to make deposits available to customers in some instances prior to the time a bank can be certain a check is collected. This argument is not persuasive for two reasons. First, the Act was not in effect during the time period in question and is therefore, irrelevant. In this case, Mercantile chose to make the deposits immediately available, for a fee, when the applicable law at the time did not require Mercantile to do so. Therefore, I need not reach the issue of whether "supplies funds" applies to a situation where a bank is required by the 1987 Expedited Funds Act to give a customer access to uncollected funds. Second, even if "supplies funds" includes when a bank provides same day availability under the Expedited Funds Act of 1987, the Act is not in conflict with § 3505(b) because "supplying funds" alone is not enough to subject a bank to § 3505(b) liability. A bank will only become liable

when it supplies funds "for the specific purpose of paying wages . . . with actual notice or knowledge . . . that such employer will not be able to make timely payment or deposit of the . . . tax." 26 U.S.C. § 3505(b).

In this case, Mercantile Bank, for a fee, chose to give Manley immediate access to funds from checks deposited in Manley's account. Voluntarily allowing a customer to access funds from uncollected checks that a customer would not otherwise have a right to access is furnishing the customer with an available pecuniary resource, the extension of credit. Therefore, Mercantile supplied funds within the meaning of § 3505(b) when it furnished Manley with same day availability on uncollected funds. Accordingly, defendant's Motion for Partial Summary Judgment will be granted.

### IV. *Conclusion*

Accordingly it is ORDERED that:

1) plaintiffs' Motion for Summary Judgment is denied; and

2) defendant's Motion for Partial Summary Judgment is granted.