588 F.2d 646
 Hayden J. WATTS, Appellant,
v.
Lou V. BREWER, Warden, Iowa State Penitentiary, and Paul L.
Loeffelholz, in his full capacity as M.D., and
Superintendent of the Iowa Medical
Facility at Oakdale, Iowa, Appellees.
 No. 78-1275.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 15, 1978.
Decided Dec. 18, 1978.
 
 Anne L. Spitzer, Iowa City, Iowa, for appellant.
 Gary L. Hayward, Asst. Atty. Gen., Des Moines, Iowa, for appellees; Richard C. Turner, Atty. Gen., Stephen C. Robinson, Asst. Atty. Gen., Des Moines, Iowa, on brief.
 Before STEPHENSON, HENLEY and McMILLIAN, Circuit Judges.
 HENLEY, Circuit Judge.
 
 
 1
 This is a civil rights suit commenced in the United States District Court for the Southern District of Iowa by two inmates of the Iowa State Penitentiary (ISP) which is located at Fort Madison in the Southern District of Iowa. Plaintiffs below were Hayden J. Watts and David George Dee. The original defendants were Lou V. Brewer, Warden of ISP, and Dr. Paul L. Loeffelholz, Acting Superintendent of the Iowa Security Medical Facility (ISMF) located at Oakdale, Iowa.[1] The case was assigned to the docket of District Judge William C. Stuart, who appointed members of the Legal Aid Clinic of the University of Iowa College of Law to represent the plaintiffs. In due course, the complaint, which had been tendered by plaintiffs pro se, was amended, and additional state officers and employees connected with the Adult Corrections Division of the Iowa Department of Social Services were brought into the case as defendants.
 
 
 2
 The genesis of the controversy is the fact that in the early 1970's, probably in 1973, plaintiff Dee was convicted of rape in the District Court of Jefferson County, Iowa, and was sentenced to imprisonment in ISP for a period of fifty years. His conviction was affirmed on direct appeal. State of Iowa v. Dee, 218 N.W.2d 561 (Iowa 1974). Thereafter, Dee entered ISP to serve his sentence and became acquainted with the plaintiff, Watts.
 
 
 3
 At that time Watts was what is known as an "inmate writ writer." That is to say he was a convict who possessed or claimed to possess some knowledge of law and procedure in fields of interest to convicts and held himself out as being ready, willing and able to "write writs" to the courts on behalf of other inmates of the institution, and, of course, he might "write writs" on his own behalf.[2]
 
 
 4
 Dee engaged the services of Watts, and Watts prepared for Dee a petition for post conviction relief that was filed in the District Court of Jefferson County. While that petition was pending in the state court (and it may be pending there still), Dee was transferred temporarily from ISP to ISMF in 1976 for psychiatric evaluation. The evaluation having been completed, Dee was returned to ISP. Of course, Dee and Watts were physically separated while the former was in ISMF and the latter was in ISP.
 
 
 5
 During his stay in ISMF Dee appears to have desired to prosecute his petition in the sentencing court, but he discovered that there is no law library in ISMF. He thereupon applied to the sentencing court to appoint a regular attorney for him, and such an appointment was made. The litigation in the United States District Court was commenced after Dee was returned to ISP. In their complaint as amended plaintiffs claimed that while Dee was confined in ISMF he suffered a number of constitutional deprivations including the loss of the writ writing services and legal advice of Watts, and Watts claimed that during the same period of time and perhaps thereafter he was denied an alleged constitutional right to provide legal services to Dee and that ISP personnel by means of threats undertook to deter him from providing any legal assistance to Dee.
 
 
 6
 Plaintiffs sought declaratory, injunctive and monetary relief. Jurisdiction was based on 42 U.S.C. § 1983 as implemented by 28 U.S.C. § 1343.
 
 
 7
 The defendants denied that plaintiffs were entitled to any relief and moved for summary judgment against both plaintiffs pursuant to Fed.R.Civ.P. 56. The district court overruled the motion as it applied to Dee, and his claim is still pending in the district court. The motion was granted as to Watts and his complaint was dismissed. Thereafter, the district court made a finding and certification under Fed.R.Civ.P. 54(b) which has enabled Watts to appeal at this time from the summary judgment granted against him.
 
 
 8
 After the notice of appeal was filed by Watts, he was released from ISP, and is no longer confined in that institution or in any other institution operated by the State of Iowa. His release has mooted his claims for declaratory and injunctive relief but has not mooted his claim for monetary damages.
 
 
 9
 In passing upon the defendants' motion for summary judgment the district court was required, and we are required, to view the case in the light most favorable to Watts and to give him the benefit of all inferences in his favor that reasonably may be drawn from the evidence. Moreover, even though the facts in a case may be undisputed, it does not necessarily follow that summary judgment under Rule 56 is appropriate; the court must still consider the legal questions raised by the undisputed facts. See Stifel, Nicolaus & Co. v. Dain, Kalman & Quail, Inc., 578 F.2d 1256, 1263 (8th Cir. 1978), and cases cited.
 
 
 10
 We have carefully considered the record before us, and we affirm without difficulty the action of the district court in granting summary judgment against Watts and dismissing his complaint.
 
 
 11
 First, let us point out that there are three things that this case does not involve. It does not involve the right of an inmate of a prison or jail to have access to the federal courts to seek relief from his imprisonment or from the conditions thereof. That right has been established since the decision of the Supreme Court in Ex parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941). Neither does the case involve the right of an inmate to have the assistance of another inmate in gaining access to the courts for the redress of grievances where those who have the former inmate in charge have not otherwise provided him with legal assistance or made more conventional legal assistance available to him. Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); Finney v. Arkansas Bd. of Correction, 505 F.2d 194, 213 (8th Cir. 1974); Finney v. Hutto, 410 F.Supp. 251, 262-63 (E.D.Ark.1976), aff'd, 548 F.2d 740 (8th Cir. 1977), aff'd, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). Finally, the case presents no question as to constitutional deprivations, if any, that the plaintiff, Dee, may have sustained while confined in ISMF or thereafter.
 
 
 12
 All that we are concerned with here is whether the individual plaintiff, Watts, suffered a personal deprivation of federally protected rights which entitles him to an award of monetary damages against any of the defendants.
 
 
 13
 In resisting the claim of Watts the defendants advance the basic contention that while an inmate of a prison who has no other access to legal assistance has a constitutional right to the services of an inmate writ writer, Johnson v. Avery, supra, the writ writer has no reciprocal constitutional right to provide the service.
 
 
 14
 That contention certainly has arguable validity, but the district court did not base its decision upon it, nor do we.[3] In our opinion the claim of Watts for an award of damages against the several defendants ultimately named in the case is simply insubstantial.
 
 
 15
 What happened was that after Dee was transferred to ISMF, he and Watts undertook surreptitiously to correspond with each other with respect to the petition that Dee had pending in the sentencing court. In engaging in this surreptitious correspondence Dee and Watts used intermediaries including the wife of Watts. Apparently some of the communications passed unintercepted, but at least one or two letters from Watts to Dee were intercepted at ISMF and at least one communication from Dee to Watts was intercepted at ISP.
 
 
 16
 As a result of the interceptions, Dee sustained a loss of two days good time, and Watts was reprimanded and warned that if he persisted in trying to communicate with convicts in other Iowa institutions in violation of prison rules, he would lose all of his communications privileges. A claim for damages, whether actual or punitive, or both based on the fourteenth amendment cannot successfully be bottomed on so frail a foundation.[4]
 
 
 17
 We recognize that today under ruling judicial decisions the inmates of prisons have a constitutionally protected right to reasonable correspondence with persons in the outside world. Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). And that right was discussed in some detail in the opinion of this court in Finney v. Arkansas Bd. of Correction, supra, 505 F.2d at 210-12. That right, however, is not untrammeled. It is subject to reasonable and necessary restrictions properly geared to legitimate institutional interests. Finney v. Arkansas Bd. of Correction, supra, 505 F.2d at 210-11.[5]
 
 
 18
 We do not say that a state has an unqualified right to forbid an inmate of one of its penal institutions to correspond with an inmate of another penal institution in the same state or in a different state. We think it obvious, however, that where such correspondence is involved, the institutional authorities have a peculiar and compelling interest in the regulation of such communications and in prohibiting smuggled or surreptitious correspondence between inmates of different institutions.[6]
 
 
 19
 As far as this case is concerned, it does not appear that while he was confined in ISP Watts was denied his right to communicate on his own behalf with the courts or with counsel, or that he was forbidden to give legal assistance to other inmates of ISP. And all that happened to Watts as a result of his efforts to communicate with Dee while the latter was confined in ISMF was that the former was reprimanded and warned. Watts simply has sustained no damage. Cf. Wycoff v. Brewer, 572 F.2d 1260, 1266-67 (8th Cir. 1978).
 
 
 20
 Affirmed.
 
 
 
 [1]
 Both Fort Madison and Oakdale are located in the southeastern part of the state. However, Oakdale is a substantial distance from Fort Madison
 
 
 [2]
 To inmates and to lawyers and judges who are familiar with prisoner litigation terms like "writ," "writ writer," and "to throw a writ" have become terms of common speech. To the uninitiated it may be helpful to state that a "writ" as herein used is simply a petition to a court for judicial relief of one kind or another, to "throw a writ" is simply to file the petition or tender it to the court for filing, and the "writ writer" is the inmate who prepares the petition usually to be subscribed, sworn to, and mailed out of the prison by the inmate on whose behalf the petition has been prepared. While this use of the word "writ" is not generally acceptable, it is not without ancient historical basis, and in old English books, " 'writ' is used as equivalent to 'action;' hence writs are sometimes divided into real, personal and mixed." Black's Law Dictionary, 4th ed., "Writ," p. 1783. Moreover, in Scotland an individual holding a position equivalent to that of attorney at law in England and the United States is referred to as a "Writer to the Signet." Ibid., "Writer To The Signet," p. 1787
 
 
 [3]
 The same contention was urged upon us by the State of Missouri in In re Green, 586 F.2d 1247 (8th Cir. 1978). There the district court had enjoined Green, an inveterate writ writer, from filing any further petitions for other inmates of the Missouri prison system and had held Green in contempt. We affirmed. However, the decision of the district court and of this court was not based on a premise that an inmate does not have a constitutional right to give legal assistance to other inmates but on the proposition that Green as an individual had grossly abused the process of the district court, and that that court had as much right to protect itself against an inmate writ writer as it had to protect itself against the conduct of an unscrupulous, unethical or irresponsible lawyer in the civilian world
 
 
 [4]
 We refer, of course, to the claim of Watts. As stated, we are not here concerned with the claim of Dee that he was mistreated and suffered constitutional deprivations while confined in ISMF. That claim may or may not have substance
 
 
 [5]
 At least most, and perhaps all, of the penal institutions in the United States today recognize that inmates have a practically unrestricted right to correspond privately and without censorship or inspection with courts, court officials and attorneys. That type of correspondence is generally described in prison rules and regulations as "privileged correspondence." There was a qualified recognition of this right at ISP in 1974 following the Procunier decision, Supra. See Wycoff v. Brewer, 572 F.2d 1260, 1263 (8th Cir. 1978)
 
 
 [6]
 For example, an inmate of one institution may engage in conduct that earns him the ill will and hatred of other inmates to the extent that the inmate in question must be transferred for his own safety from one institution to another. The purpose of such a transfer would or might be frustrated if another inmate of the transferring institution is able to communicate secretly with one or more inmates of the transferee institution