Cecil L. WILLIAMS, Plaintiff,

v.

Don OMODT, Captain Moran, S.J. Tobler and S. Catapano, Defendants.

Civ. No. 4–84–243.

United States District Court, D. Minnesota, Fourth Division.

July 3, 1986.

James J. Agan, Burnsville, Minn., for plaintiff.

Mark Kapier Maher, Asst. Hennepin Co. Atty., Minneapolis, Minn., for defendants Omodt, Tobler and Catapano.

Joseph B. Marshall, Marshall & Associates, P.A., Circle Pines, Minn., for defendant Moran.

DIANA E. MURPHY, District Judge.

Cecil L. Williams, formerly an inmate at the Hennepin County Adult Detention Center (HCADC), brought this action for dam-

ages and injunctive relief against Sheriff Donald Omodt, Captain Allan A. Moran, former HCADC Deputy Sheriff Steven J. Tobler, and HCADC Deputy Sheriff Salvatore A. Catapano. Williams alleged that Tobler and Catapano assaulted and beat him, that he was subjected to racial epithets by HCADC officials, and that defendants Omodt and Moran were responsible for this physical and verbal abuse because they failed properly to train and supervise their subordinates. He seeks to have defendants enjoined from abusing prisoners, compensatory and punitive damages, and attorney's fees.

The case was tried to the court, which heard the testimony of plaintiff Williams, defendants Moran and Catapano, and HCADC employees Roy A. Green, Jacqueline Lindskoog, and Robert Hartoff. Defendant Tobler testified by deposition. Having considered the evidence produced at trial and having observed the demeanor of the live witnesses and considered the credibility of all, the court hereby enters in memorandum form its findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

The central events in this case took place on February 17, 1984 in the HCADC where Cecil Lee Williams was incarcerated. It is not clear in the record whether Williams' status was that of pretrial detainee or convicted felon at the time.[1] Defendant Omodt is, and was in February 1984, the Sheriff of Hennepin County; his responsibilities include overseeing HCADC.[2] Defendant Moran is, and was in February 1984, the senior officer at HCADC. Defendants Tobler and Catapano and witness Green were all HCADC Deputies in February 1984. Tobler has left the Sheriff's office and Min-

nesota. Catapano remains at HCADC. Green is now a Senior Deputy Sheriff with Hennepin County.

*A. Claims Against Deputies Tobler and Catapano*

On February 17, 1984, a voice on the loudspeaker, which Williams believed to be that of defendant Tobler, instructed Williams to "roll it up" to move. Williams had not expected to move, but followed the instructions and rolled his belongings in his bed sheet. He then had a long wait before Tobler arrived. On the way from his cell, Williams dropped some items from his roll and stopped to retrieve them up. Tobler picked up several and dropped them into a trash can. They went on to the mattress room where Williams left his mattress and then followed Tobler to the elevator. Tobler clamped down very tightly on Williams' handcuffs as they stepped into the elevator. They went up to the fifth floor where Williams saw and greeted Deputy Green. Williams and Green testified that they had always had a cordial relationship.

Williams and Tobler proceeded to the fifth floor mattress room so that Williams could pick up a new mattress. Williams asked Tobler to loosen his cuffs or help him place the mattress over his shoulder. Tobler motioned for him to bring his hands forward. Instead of removing or loosening the cuffs, however, Tobler called Williams a "black nigger" and hit him over the left eye. Tobler took several more swings. Williams backed away and yelled for help. Tobler began to choke Williams from behind and forced him to the ground where Tobler continued to hit him.[3] Tobler also pressed down on Williams' handcuffs.

1. Williams originally pled guilty to two counts of second degree assault and was sentenced. He later sought to withdraw his plea, asserting that the prosecutor had violated the plea agreement. The parties stipulated that Williams be permitted to withdraw his plea, and the Minnesota Supreme Court remanded the case. Williams subsequently withdrew his guilty pleas and was tried for and convicted of attempted murder, kidnapping and second-degree assault. He was housed in the HCADC in connection with the plea withdrawal and until after his trial and subsequent conviction.

2. At the close of plaintiff's case, defendants Omodt and Moran moved to dismiss the claims against them. The court granted Omodt's motion and dismissed all claims against him. Moran's motion was denied at that time.

3. Williams is a man of medium build, who weighed about 175 pounds at the time of these

Deputy Green saw Williams and Tobler arrive through a window of the control room where he was working. After they had passed from his view, Green heard Williams yell for him and went to see what the trouble was. When Green got through the two doors which separated him from Tobler and Williams, he found Williams on his back on the floor, with Tobler straddling him and holding his wrists to the ground. Williams seemed to be struggling to get free. Green told Williams the incident was over. Catapano later entered the room and found Tobler and Williams out of breath. Green and Catapano testified that they did not see Tobler strike or otherwise hurt Williams, but acknowledged that such actions could have occurred when Williams and Tobler were alone.

■ On the basis of all the evidence, the court credits Williams' account of these events. The court infers from the evidence that Williams was annoyed by his long wait for Tobler to arrive and expressed his annoyance to Tobler in some manner. There is no credible evidence that Williams threatened Tobler in any way, however, and the court finds that Tobler initiated the physical struggle.[4]

■ Tobler and Catapano then escorted Williams to a new area on the fifth floor. Once in the cell,[5] Tobler pushed down again on Williams' handcuffs. Catapano said "That's enough." He removed Williams handcuffs and left. Tobler then kicked Williams and called him a bastard. The only evidence of improper conduct on Catapano's part was Williams' testimony that Catapano joined Tobler in throwing Williams against the wall of the new cell. Williams' own testimony portrayed Catapano in a moderating role to Tobler, however. In light of all the evidence, the court finds that Williams has failed to prove that Catapano acted in violation of his civil rights.

Williams asked Catapano to see a sergeant, and Sergeant Lenox came after some time to discuss the incident. At Lenox's direction, Catapano took Williams to see Nurse Jacqueline Lindskoog. The testimony differs about the nature and extent of Williams' injuries. Williams testified that he suffered pain, bruises, cuts, and bleeding. Tobler testified that Williams was wholly uninjured, but the other witnesses' testimony is consistent with the fact of injury. Photographs taken by Crime Lab personnel on February 17 show a number of bruises and swellings on Williams' body and are generally consistent with his testimony. The court finds that Williams suffered bruises, contusions, swelling, and considerable pain, but no permanent physical injury.

The Fourteenth Amendment protects pretrial detainees' "liberty interest in freedom from punishment through bodily injury." *Putnam v. Gerloff,* 639 F.2d 415, 420 (8th Cir.1981). Under a due process analysis, a pretrial detainee may "recover for excessive use of force ... if the degree of force used was unreasonable under the circumstances, or if the force was used for an improper purpose." *Patzner v. Burkett,* 779 F.2d 1363 (8th Cir.1985). While "[d]ue process requires that a pretrial detainee not be punished, [a] sentenced inmate ...

events. Tobler testified at deposition that he weighed 240 pounds.

**4.** Tobler's account of the same incident differs substantially, but much of his testimony does not appear credible in the context of all the evidence. He characterized Williams as the instigator. Tobler acknowledged that Williams was handcuffed, but asserted that Williams pulled his hands back and up in a threatening manner in the mattress room. Tobler therefore "brought him to the ground." He testified that he never struck or punched prisoners because such efforts resulted in broken hands or bite wounds as he knew from watching other deputies. He did not recall their names, but was certain that none were still at HCADC and that the incidents were all provoked by prisoners. He said that he never used racial slurs and had never heard the epithet "nigger" before this litigation.

**5.** Each of the participants tells a different story. Tobler testified that he and Catapano lay Williams on a bed and then left him. Catapano testified that they told Williams to lie on the cell floor and then removed his handcuffs. Williams testified that he was thrown up against the wall, where his head narrowly missed hitting the toilet.

may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment." *Id.* 639 F.2d at 419 (quoting *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979)).

The Eighth Amendment requires that imprisonment comport with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) (citation omitted). It prohibits the "unnecessary and wanton infliction of pain." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981); *Martin v. White,* 742 F.2d 469, 474 (8th Cir.1984).

▌ Plaintiff's status on February 17, 1984 is not clear from the record, but under either the due process or the Eighth Amendment standard, plaintiff is entitled to judgment against defendant Tobler. *See Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). Tobler violated Williams' constitutional rights by using unreasonable force and intentionally inflicting unnecessary pain. Jailers have a difficult and responsible job, but in our constitutional system, they may not misuse their power over prisoners. In light of Tobler's intentional violation of Williams' constitutional rights and the injuries he inflicted, he should be liable to Williams in the amount of $5000 in damages. Plaintiff is also entitled to reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988.

Plaintiff also seeks punitive damages. The court may award punitive damages "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). After weighing all the evidence, the court finds that Tobler acted with evil intent and reckless disregard to Williams' constitutional rights. Williams is therefore entitled to punitive damages. Under all the circumstances, an award of punitive damages in the amount of $1000 is appropriate.

## B. Claims Against Defendant Moran

Williams seeks damages against defendant Moran for failing to train, supervise, and control his subordinates, permitting them to abuse minority group inmates verbally and physically, and for taking no disciplinary action in response to Williams' beating. He asserted that racially motivated abuse and violence were rife at HCADC and that Moran tolerated racist comments and actions. The majority of the inmates at HCADC were black,[6] and Williams testified that deputies regularly joked at the expense of black and Indian inmates and that Tobler frequently made racist remarks.[7] Williams also testified that he had seen other prisoners, particularly minority prisoners, being beaten by deputies.

Captain Moran became aware of the February 17 incident through routine incident reports, but did not perform or order any separate investigation.[8] Williams believed that Moran ignored several inmate grievance forms concerning the incident, but Moran testified that some HCADC official deals with all grievances received from prisoners.[9] Williams asserted that after the incident on February 17, Tobler continued to taunt him and Catapano gave him a menacing look. Shortly after the incident, Moran asked the jail sergeants to try to

---

**6.** Williams testified that a large majority of the inmates at the jail were black. Catapano testified that more than half of the inmates were black. Moran testified that no statistics were kept on racial composition, but that there were a substantial number of black inmates.

**7.** The various jail officials and employees agreed that such remarks would be against formal or informal HCADC rules. Moran said that he had no knowledge of any such usage.

**8.** It appears that two external investigations resulted from Williams' filing of this suit; neither resulted in any disciplinary action.

**9.** Moran, Tobler, Catapano, and Green testified about HCADC hiring, organization, procedures, and training.

keep Tobler and Catapano out of the area in which Williams was housed. After Williams filed this suit, Moran ordered those deputies kept away from Williams, in accordance with standard practice. Approximately one week after Williams initiated this litigation, Moran and several other officials visited his cell. They discussed the February 17 incident. The record indicates that Moran believed Williams had instigated the confrontation.

■■■ A § 1983 plaintiff cannot shift the responsibility for injuries to the wrongdoer's supervisors on a theory of respondeat superior, but can prevail against a supervisor who causes plaintiff's injuries by breaching a duty to train, supervise, or control subordinates. *See, e.g., Hahn v. McLey*, 737 F.2d 771, 773 (8th Cir.1984) (per curiam). Plaintiff's testimony about other beatings or racial incidents in the jail was vague and conclusory. Plaintiff has not shown that Moran breached any duty to train or supervise his subordinates or that he had any knowledge of any abuses in the jail. While a more thorough investigation of the incident on February 17 would have been preferable, Moran's failure to conduct one did not injure plaintiff or rise to the level of a constitutional violation.

### C. Claims for Injunctive Relief

■ Finally, plaintiff seeks to enjoin defendants from abusing prisoners in their custody and to require an inquiry into abuse of HCADC prisoners. These claims for injunctive relief are moot because Williams is no longer an HCADC prisoner. *See, e.g., Watts v. Brewer*, 588 F.2d 646, 648 (8th Cir.1978).

### D. Summary

Plaintiff Cecil Williams was committed to the care and custody of the HCADC and its officials. While incarcerated, Williams was beaten and injured by a jailer without justification. This entitles him to judgment against that officer, but plaintiff has not proven his claims against the other defendants.

### ORDER

Accordingly, based upon the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that

1. Plaintiff is entitled to his costs and judgment against defendant Steven J. Tobler in the amount of $5000 actual or compensatory damages and $1000 punitive damages for violating plaintiff's constitutional rights.

2. Plaintiff is not entitled to relief against defendants Allan A. Moran or Salvatore A. Catapano, and the claims against them are dismissed with prejudice.

3. Plaintiff's claims for injunctive relief are dismissed as moot.

4. Any application for attorney's fees must be made within thirty days, pursuant to D.Minn.R. 6 and 4D.

LET JUDGMENT BE ENTERED ACCORDINGLY.