814 F.2d 524
 7 Fed.R.Serv.3d 79
 Terrence P. O'DONNELL, Jr., Appellant,
v.
Sheriff Pat THOMAS; Capt. Dan Williamson; Deputy Mark
Griffey; Deputy McNulty; Deputy Mott; Deputy
Jiff; Deputy Arthur Dudley; Deputy
Friis; and Deputy Squire, Appellees.
 No. 86-1534.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 9, 1986.
Decided March 20, 1987.
 
 James J. DeMars, Lincoln, Neb., for appellant.
 Michael A. Fortune, Omaha, Neb., for appellees.
 Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and CONMY,* District Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 Terrence P. O'Donnell, Jr., appeals from an order of the District Court for the District of Nebraska dismissing this action brought under 42 U.S.C. Sec. 1983. O'Donnell alleged numerous constitutional violations arising out of conditions during his pretrial incarceration at the Sarpy County Jail (the jail) in Bellevue, Nebraska. Defendants named in the action include the Sarpy County Sheriff, the jail supervisor and deputy sheriffs who serve as guards at the jail (jail officials). The case was tried without a jury and, at the close of O'Donnell's case-in-chief, the district court granted defendants' motion for involuntary dismissal pursuant to Fed.R.Civ.P. 41(b). For reasons stated from the bench, the district court found that O'Donnell had shown no right to relief under Sec. 1983.
 
 
 2
 For reversal, O'Donnell argues that the district court (1) made clearly erroneous factual findings, (2) erred in concluding that the jail supervisor was not liable on a theory of respondeat superior, (3) erred in concluding that the cumulative effect of conditions at the jail did not rise to the level of constitutional violation, and (4) erred in dismissing the case because the evidence adduced at trial was sufficient to withstand the motion for involuntary dismissal. For the reasons discussed below, we remand the case to the district court for further findings and conclusions of law.
 
 
 3
 O'Donnell was incarcerated at the jail from March 23, 1984, to December 21, 1984, awaiting trial on a burglary charge. He spent his first four days of custody in a six-person holding cell. During this period, O'Donnell repeatedly complained to guards that he could not sleep because of the continuous lighting, the noise and the conduct of other prisoners. O'Donnell appeared extremely agitated to guards and an examination by a psychiatrist was ordered. O'Donnell was diagnosed as being close to a nervous breakdown and given medication. A few days later, he was again examined. The psychiatrist determined that O'Donnell's condition was deteriorating and significantly increased his medication.[1]
 
 
 4
 In the following weeks of custody, O'Donnell continued to complain to guards that he could not sleep. He also complained of serious stomach pains. O'Donnell was prescribed sleeping pills and, about six weeks after entering the jail, was admitted to the hospital for tests to diagnose the stomach pains. These tests indicated O'Donnell had an ulcer. He was prescribed medication for the ulcer and told to eat a bland diet. On returning to the jail, O'Donnell claims he was often served spicy foods that aggravated his ulcer and sometimes made it impossible for him to eat. O'Donnell also claims guards would not procure for him a medical device he used to relieve pain in a disabled hand.
 
 
 5
 On May 17, 1984, O'Donnell unsuccessfully tried to kill himself by swallowing a hoarded cache of 28-29 sleeping pills. The jail supervisor testified at trial that the jail has a procedure for administering medication to ensure that prisoners actually take all medication that is dispensed. O'Donnell testified that guards often did not follow this procedure in administering his sleeping pills.
 
 
 6
 Following the suicide attempt, O'Donnell was hospitalized for six days. While hospitalized, he claims that he was cuffed to the hospital bed at both hand and foot. The jail supervisor acknowledged at trial that O'Donnell was restrained while hospitalized and explained that this restraint was recommended by the hospital psychiatrist. O'Donnell was under continuous guard at the hospital and claims that several guards threatened him and yelled at him.
 
 
 7
 Following his hospitalization, O'Donnell was returned to the jail. O'Donnell testified that on at least two occasions, female guards were assigned to supervise him while he used the showers. He also claims that female guards monitored in-cell cameras. Prisoner toilet facilities are located within the cells.
 
 
 8
 O'Donnell received in the mail a large manila envelope containing three letters he had written and addressed to a United States Magistrate. He had left the letters behind at a hospital and they were returned to him at the jail. In the regular course of inspecting inmate mail, jail officials opened the outside manila envelope. O'Donnell also claims the three letters contained inside the manila envelope had been opened, even though these letters could be identified by their addresses as legal communications.
 
 
 9
 O'Donnell was transferred from the Sarpy County Jail in December 1984. He brought this Sec. 1983 action alleging civil rights violations in three basic areas. He complains first that jail officials opened privileged legal communications in violation of his due process right of access to the courts. A second group of claims concerns allegations of cruel and unusual punishment. O'Donnell alleges guards at the jail intentionally denied him proper medical treatment or were deliberately indifferent to his need for medical treatment for (1) mental illness, (2) ulcer, and (3) pain relief for his disabled hand. In a related claim, he alleges that a lax procedure for administering medication at the jail permitted him to hoard enough sleeping pills while in a psychologically disturbed condition to attempt suicide. He also claims guards threatened him while he was hospitalized following his suicide attempt. O'Donnell finally claims that female guards were assigned to monitor him in areas where he used the shower and toilet facilities in violation of his right of privacy.
 
 
 10
 O'Donnell testified at trial as to each of these claims. He also testified about the cumulative deleterious effect of the jail conditions on his troubled emotional and mental condition. The jail supervisor testified, and the depositions of three psychiatrists who had examined O'Donnell while he was incarcerated were also admitted into evidence. At the close of O'Donnell's case-in-chief, the district court dismissed the case pursuant to Rule 41(b)[2] on the ground that, upon the facts and the law, O'Donnell had shown no right to relief. This appeal followed.
 
 
 11
 Before we reach O'Donnell's contentions on appeal, we must face a preliminary question of the completeness of the district court ruling. Our review of the record indicates that the district court failed to make factual findings on all the evidence presented at trial; specifically, there remain unresolved two factual issues material to claims O'Donnell raised at trial. The first issue involves O'Donnell's claim that jail officials interfered with his ability to correspond with the courts. O'Donnell testified that jail officials opened three letters returned to him through the mail that could be identified by their addresses as legal communications. The district court in its findings discussed the propriety of opening the outside manila envelope, but did not discuss whether and why jail officials opened the three envelopes contained within the manila envelope. The second unresolved issue involves the reasonableness of the restraints under which O'Donnell was kept while hospitalized following his suicide attempt. O'Donnell testified that he was cuffed to a bed for six days during this period.
 
 
 12
 If a plaintiff presents evidence stating a prima facie case for relief on a particular claim, the district court must make factual findings and conclusions of law dispensing with the claim. Dismissal of the claim pursuant to Rule 41(b) is otherwise improper. O'Donnell presented evidence on these two unresolved issues in his case-in-chief, stating colorable claims of constitutional violation. See, e.g., Watts v. Brewer, 588 F.2d 646, 649 n. 6 (8th Cir.1978) (prisoners have right to correspond privately and without censorship or inspection with attorneys, courts and court officials); Tate v. Kassulke, 409 F.Supp. 651 (W.D.Ky.1976) (claim for cruel and unusual punishment stated where inmate chained to bed for protracted length of time).
 
 
 13
 Accordingly, we remand this case to the district court for further findings and conclusions of law. The district court is directed to make factual findings and conclusions of law regarding the issues of (1) whether, and, if so, why, jail officials opened three letters that were addressed to a federal magistrate and were returned to O'Donnell at the jail inside a large manila envelope, and (2) whether, and if so, for how long and under what conditions, O'Donnell was cuffed to a bed following his suicide attempt and whether this restraint constituted cruel and unusual punishment. The district court is requested to certify its findings and conclusions to this court as promptly as possible. We will retain jurisdiction of the appeal pending receipt of the district court's certification, after which we will proceed to decide the appeal.
 
 
 
 *
 The Honorable Patrick A. Conmy, Chief Judge, United States District Court for the District of North Dakota, sitting by designation
 
 
 [1]
 O'Donnell was later evaluated for psychological competency and was found competent to stand trial
 
 
 [2]
 Fed.R.Civ.P. 41(b) provides, in relevant part:
 After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his [or her] evidence, the defendant ... may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff.... If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision ... operates as an adjudication upon the merits.