# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1079

_____

Tyler J. Keup,

        Appellee,

    v.

F.X. Hopkins; Dennis Bakewell;
all being sued in their individual
capacities,

        Appellants.

Appeal from the United States
District Court for the
District of Nebraska.

_____

Submitted: October 22, 2009
Filed: March 4, 2010

_____

Before RILEY, SMITH, and GRUENDER, Circuit Judges.

_____

RILEY, Circuit Judge.

Tyler Keup, an artist in the custody of the Nebraska Department of Correctional Services (NDCS), tried to send drawings of a marijuana leaf and a bare-breasted woman to his mother and the Maoist Internationalist Movement (Maoists). When NDCS rebuffed Keup's efforts, Keup sued various NDCS officials under 42 U.S.C. § 1983 for violating his First Amendment rights. The district court directed a verdict in Keup's favor against F.X. Hopkins and Dennis Bakewell, awarded Keup nominal damages, and ordered Hopkins and Bakewell to pay approximately $25,000 in

attorney fees and costs. Hopkins and Bakewell appeal. We affirm in part and reverse in part.

## I.    BACKGROUND

### A.    Parties

Keup is a prisoner in the custody of NDCS at the Lincoln Correctional Center (LCC). At all relevant times, Hopkins was one of NDCS's directors. Bakewell was LCC's warden. Salvador Cruz, Ty DeKoenig,[1] and Diane Sabatka-Rine were lower-level NDCS employees at LCC.

### B.    Keup's Grievances

While incarcerated, Keup challenged various restrictions upon his ability to send and receive mail. Keup availed himself of NDCS's three-level grievance procedure. To exhaust administrative remedies, a prisoner must file (1) an informal grievance, (2) a step-one grievance, and (3) a step-two grievance. 68 Neb. Admin. Code, ch. 2 § 004. See also 42 U.S.C. § 1997e; Neb. Rev. Stat. §§ 83-4,111 & 83-4,135-139.

Time limits apply at each level of the NDCS grievance process. A complaining inmate must file an informal grievance within three days of the "incident of concern." If the inmate is dissatisfied with NDCS's response, the inmate must file a step-one grievance within fifteen days. If the inmate remains dissatisfied, the inmate must file a step-two grievance within ten days of NDCS's response to the step-one grievance.

---

[1]The spelling of DeKoenig's name is unclear. We adopt the spelling in Keup's amended complaint.

Four incidents are relevant to this appeal:

### 1. March 2005—Attempt to Mail Drawings to Mother

In March 2005, Keup tried to send his mother two drawings, one of a cross containing a small marijuana leaf and the other a bare-breasted woman. At the time, § 207.1.1 of LCC's Operational Memorandum (OM) forbade inmates from manufacturing, possessing, or distributing drawings of "[u]ncovered female breasts," "illegal drugs," and any other "obscene, nude, lewd, lascivious, . . . or filthy" material. LCC personnel accordingly refused to let Keup mail the drawings.

Keup timely grieved NDCS's refusal, alleging a violation of his free speech rights. Keup reasoned "it seems illogical that I can receive explicit porn magazines [and] books containing images of drugs but I can't use my artistic abilities to create certain drawings for a good cause!" Cruz denied Keup's informal grievance, Bakewell denied Keup's step-one grievance, and Hopkins denied Keup's step-two grievance.

### 2. September 2005—Attempt to Mail Photocopies to the Maoists

In September 2005, Keup tried to send photocopies of his drawings of the marijuana leaf and the bare-breasted woman to the Maoists. Apparently, Keup was asking the Maoists for legal help.[2] DeKoenig intercepted the photocopies.

Keup immediately grieved DeKoenig's seizure of the photocopies, asserting a violation of his right to send legal mail. On September 16, 2005, Cruz denied Keup's informal grievance. On November 3, 2005, Keup filed a step-one grievance, reasserting his right to "unrestricted/uncensored access for the conduction of legal affairs." On December 22, 2005, Bakewell denied the step-one grievance as untimely.

---

[2]According to its now-defunct website, the Maoists were a "collection of existing or emerging Maoist internationalist parties" dedicated to "uphold[ing] the revolutionary communist ideology of Marxism-Leninism-Maoism."

On July 6, 2006, Keup filed a step-two grievance, in which he repeated the claims in his step-one and informal grievances. Keup alleged he was unable to file his step-one grievance in a timely manner because LCC personnel segregated him from the general prison population on September 24, 2005. On August 10, 2006, Hopkins denied Keup's step-two grievance as untimely and pointed out segregated prisoners have unfettered access to NDCS's grievance procedure.

### 3.    December 2006—Attempt to Receive Pastor Sukraw's Card

In late December 2006, Pastor Joe Sukraw, a religious cleric from North Platte, Nebraska, purchased a religious book and a greeting card for Keup. The bookstore sent Keup the book and the card in a single mailing, and LCC personnel intercepted the shipment. Section 205.1.1 of the OM provided that "[a]ll publications . . . must be prepaid and sent to the inmate directly from the publisher" but "cards . . . can not be included in mailings from the bookstore/publisher." LCC personnel returned the card to the sender, stapled a return notice to the book, and delivered the book to Keup.

Keup timely grieved the return of the card, claiming LCC personnel violated the OM. Keup complained the stapling of the return notice to the book was "highly disrespectful," "degrading," and "equivical [sic] to leaving shoe prints all over ones [sic] mail before delivery." Keup asked for a new book, because the first fourteen pages of his book had staple holes in them. Cruz denied Keup's informal grievance, Sabatka-Rine denied Keup's step-one grievance, and Hopkins denied Keup's step-two grievance.

### 4.    February 2007—Attempt to Receive a Bondage Sketchbook

In February 2007, LCC personnel intercepted a bondage sketchbook in Keup's mail, because the OM forbade prisoners from possessing depictions of violent sexual acts. Keup timely grieved the interception of the bondage sketchbook, opining that "bondage is a sexual fetish and is not of a violent nature or an illegal nature" and querying "how an art book containing various sketches of nude women could pose a

threat?" Cruz denied Keup's informal grievance, Sabatka-Rine denied Keup's step-one grievance, and Hopkins denied Keup's step-two grievance.

### C.    Prior Proceedings
#### 1.    Complaint

In August 2005, Keup filed a complaint against Hopkins, Bakewell, and Cruz under 42 U.S.C. § 1983. Keup claimed Hopkins, Bakewell, and Cruz violated Keup's First and Fourteenth Amendment rights when they prohibited Keup from sending his drawings of marijuana and the bare-breasted woman to his mother. Keup requested compensatory and punitive damages, as well as declaratory and injunctive relief.

In May 2006, Hopkins, Bakewell, and Cruz answered the complaint. They denied the complaint's substance and asserted Keup's request for an "injunction is moot since changes have been made in the [OM] that allow the Plaintiff to do what he seeks the injunction to do." In September 2005, NDCS amended the OM to ban only drawings that "advocate or are likely to incite violent or illegal activity."

#### 2.    Amended Complaint

In August 2007, Keup amended his complaint with leave of court. In addition to the claims in the complaint, Keup lodged additional First and Fourteenth Amendment claims under § 1983 against Hopkins, Bakewell, DeKoenig, Cruz, and Sabatka-Rine for their respective roles in blocking the mailing of the photocopies to the Maoists; seizing the greeting card and the bondage sketchbook; and allegedly retaliating against Keup for filing the complaint (collectively, the new claims). Keup again requested monetary, declaratory, and injunctive relief.

In August and September 2007, Hopkins, Bakewell, DeKoenig, Cruz, and Sabatka-Rine answered the amended complaint. These defendants variously denied the substance of the amended complaint, asserted Keup's claims were moot to the extent Keup was asking for permission to send his drawings to his mother and the

Maoists, and maintained Keup failed to exhaust his administrative remedies as to his new claims.

### 3.     Motion for Summary Judgment

In November 2007, Hopkins, Bakewell, DeKoenig, Cruz, and Sabatka-Rine moved for summary judgment, asserting their exhaustion and mootness defenses. In February 2008, the district court rejected the defendants' exhaustion defenses because, in its view, dismissal of Keup's new claims would result in another lawsuit and foster judicial inefficiency. The district court rejected the defendants' mootness defenses as to Keup's request for monetary damages, but held Keup's requests for prospective injunctive and declaratory relief were moot because NDCS had amended the OM.

### 4.     Jury Trial

In July 2008, the district court held a jury trial on Keup's requests for damages. At the conclusion of Keup's case-in-chief, the district court directed a verdict in favor of Keup and against Hopkins and Bakewell for "prohibit[ing] the plaintiff from mailing his drawings . . . to his mother and the [Maoists]." The district court awarded Keup $1.00 in nominal damages and invited an application for attorney fees. All of Keup's remaining claims failed when the district court directed a verdict in the defendants' favor as to some claims and the jury rejected all others.

### 5.     Attorney Fees

In August 2008, Keup applied for over $30,000 in attorney fees and costs, pursuant to 42 U.S.C. § 1988(b) and Fed. R. Civ. P. 54(d). Hopkins and Bakewell objected on two alternative grounds: (1) Keup was not entitled to any attorney fees because he was not a "prevailing party" for purposes of § 1988(b), and (2) the cap on attorney fees at § 1997e(d)(2) limited the amount of attorney fees to 150% of the monetary damages award, that is, $1.50. The district court overruled these objections. The court declined to reduce Keup's attorney fees award for his lack of success at trial

and awarded Keup approximately $25,000 in attorney fees and costs.[3] Hopkins and Bakewell appealed.

## II.    DISCUSSION

Hopkins and Bakewell argue the district court erred in (1) rejecting their mootness defenses, (2) rejecting their exhaustion defenses, and (3) awarding attorney fees. We consider each assignment of error, in turn.

### A.    Mootness

Hopkins and Bakewell contend the district court erred in holding Keup's surviving claims—his requests for monetary damages to remedy NDCS's refusal to mail his drawings to his mother and the Maoists—were not moot. Keup counters Hopkins and Bakewell waived any right to appellate review of this issue. Keup points out that, although Hopkins and Bakewell pressed their mootness defenses in their summary judgment motion, they failed to reassert their mootness defenses at trial. Hopkins and Bakewell do not respond to Keup's waiver argument.

Ordinarily we "will not review a district court's denial of a motion for summary judgment after a trial on the merits." EEOC v. Sw. Bell Tel., L.P., 550 F.3d 704, 708 (8th Cir. 2008) (citing Eaddy v. Yancey, 317 F.3d 914, 916 (8th Cir. 2003)). As a general rule, a litigant must renew summary judgment arguments in Rule 50 motions for judgment as a matter of law at the close of the plaintiff's case-in-chief and again after the jury's verdict. See Eaddy, 317 F.3d at 916. After scouring the trial transcript, it appears Hopkins and Bakewell did not raise their mootness defenses at trial.

---

[3]The district court reduced the hourly rates of Keup's attorneys to $150 per hour, pursuant to 42 U.S.C. § 1997e(d)(3), because Keup's attorneys sought payment at a rate in excess of 150% of the hourly rate established for court-appointed counsel.

A narrow exception to the general rule, however, applies in this case. "Questions of mootness are matters of subject matter jurisdiction[.]" Charleston Housing Auth. v. USDA, 419 F.3d 729, 739 (8th Cir. 2005). A defendant may challenge our subject matter jurisdiction at any time. See Borntrager v. Cent. States Se. & Sw. Areas Pension Fund, 577 F.3d 913, 919 (8th Cir. 2009).

In our de novo review of the district court's ruling on the mootness issue, see Charleston, 419 F.3d at 739, we hold Keup's surviving claims are not moot. NDCS's decision to amend the OM in September 2005 mooted any need for prospective injunctive or declaratory relief, but the amendment did not deprive Keup of the opportunity to seek monetary damages for prior violations of his constitutional rights. See, e.g., Watts v. Brewer, 588 F.2d 646, 648 (8th Cir. 1978) (holding the plaintiff's release from prison "mooted his claims for declaratory and injunctive relief but [did] not moot[] his claim for monetary damages"); see also Lowry ex rel. Crow v. Watson Chapel Sch. Dist., 540 F.3d 752, 761 n.8 (8th Cir. 2008) (discussing the voluntary cessation exception to the mootness doctrine), cert. denied, 129 S. Ct. 1526 (2009).

### B. Exhaustion

Hopkins and Bakewell maintain Keup failed to exhaust his administrative remedies with respect to his request for monetary damages to remedy NDCS's refusal to mail his drawings to the Maoists. Hopkins and Bakewell interpret § 1997e to require plaintiffs to exhaust their administrative remedies with respect to all claims asserted in a lawsuit before filing the lawsuit. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under [§] 1983 . . . by a prisoner confined in any . . . prison . . . until such administrative remedies as are available are exhausted."). They point out Keup did not exhaust his administrative remedies (if he did so at all) until after he filed the complaint. Indeed, the incidents of concern giving rise to the new claims did not occur until after Keup filed his complaint. Hopkins and Bakewell aver the district court should not have permitted Keup to amend his

complaint to bootstrap the new claims into this lawsuit. Instead, Hopkins and Bakewell insist Keup should have filed a second lawsuit.

Keup rejoins Hopkins and Bakewell waived any right to appellate review of this issue, because Hopkins and Bakewell did not press their exhaustion defenses at trial. Again, Hopkins and Bakewell do not respond to Keup's waiver argument.

After reviewing the trial transcript, it appears Hopkins and Bakewell failed to raise their exhaustion defenses at trial. Unlike the issue of mootness, which is jurisdictional, "reliance on [§ 1997e(a)'s] exhaustion requirement can be waived." Foulk v. Charrier, 262 F.3d 687, 697 (8th Cir. 2001) (citing Randolph v. Rogers, 253 F.3d 342, 347 n.11 (8th Cir. 2001)). By failing to reassert their exhaustion defenses at trial, Hopkins and Bakewell waived them. See Eaddy, 317 F.3d at 916 ("Even a cursory review of precedent in this Circuit reveals that we do not review a denial of a summary-judgment motion after a full trial on the merits.").

### C. Attorney Fees
#### 1. Keup is a Prevailing Party

Because the district court directed a verdict in Keup's favor as to some of his § 1983 claims, he is a "prevailing party" entitled to attorney fees under § 1988. Hopkins and Bakewell argue a voluntary change in a defendant's behavior—such as NDCS's decision to amend the OM—standing alone does not qualify a plaintiff as a "prevailing party." See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603 (2001). Keup, however, won a finding of liability and an award of nominal damages from the district court. The district court's rulings created a sufficient "court-ordered 'chang[e] [in] the legal relationship between the'" parties to support an attorney fees award under § 1988. Id. at 604 (citation omitted); see, e.g., Ollis v. HearthStone Homes, Inc., 495 F.3d 570, 576 (8th Cir. 2007) (affirming the district court's holding that a plaintiff was a prevailing party even though he only received nominal damages because "[r]egardless of the amount

of [the] judgment, [the plaintiff] was the prevailing party and, thus, is entitled to an award of attorney fees") (citing Farrar v. Hobby, 506 U.S. 103, 112 (1992) ("[A] plaintiff who wins nominal damages is a prevailing party under § 1988.")).

### 2. Section 1997e(d)(2) Cap Applies

The district court awarded Keup approximately $25,000 in attorney fees even though the court determined Keup was entitled to only $1.00 in nominal damages. The district court's ruling is contrary to governing precedent. Section 1997e(d)(2) provides, "If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant." We have repeatedly construed this "awkwardly worded" statute to cap awards of attorney fees in prisoner rights cases to 150% of the monetary damages awarded. When the plaintiff only receives nominal damages of $1.00, § 1997e(d)(2) caps attorney fees at $1.50. See, e.g., Royal v. Kautzky, 375 F.3d 720, 725-26 (8th Cir. 2004) (referring to the statute as "awkwardly worded" and affirming an attorney fees award of $1.50); Foulk, 262 F.3d at 704 (similar); see also Pearson v. Welborn, 471 F.3d 732, 742-44 (7th Cir. 2006) (holding cap at § 1997e(d)(2) applied to a prisoner who was entitled to nominal damages); Robbins v. Chronister, 435 F.3d 1238, 1239 (10th Cir. 2006) (en banc) (similar); Walker v. Bain, 257 F.3d 660, 667 (6th Cir. 2001) (similar); Boivin v. Black, 225 F.3d 36, 40-41 (1st Cir. 2000) (similar).

Keup acknowledges this precedent but argues the cap should not apply because he obtained non-monetary relief. See Foulk, 262 F.3d at 703 n.17 ("However, if non-monetary relief is ordered (whether with or without a monetary award), the attorney's fees cap . . . does not apply.") (citations omitted); see also Dannenberg v. Valadez, 338 F.3d 1070, 1073-75 (9th Cir. 2003) (acknowledging exception); Walker, 257 F.3d at 667 n.2 (same); Boivin, 225 F.3d at 41 n.4 (same). The problem for Keup is that he did not obtain non-monetary relief. The district court's passing statement in its order awarding attorney fees that it "grant[ed Keup] the declaratory and injunctive relief he sought" lacks support in the record. The district court's other

orders and the terms of its formal judgments make clear the court did not award Keup non-monetary relief, instead dismissing all claims for declaratory or injunctive relief. Even if the district court's orders somehow could be construed as awarding Keup a declaratory judgment, we hold such a declaratory judgment would be insufficient to avoid the cap in § 1997e(d)(2). See, e.g., Pearson, 471 F.3d at 743 (holding that, where a request for equitable relief was mooted, any declaratory judgment would not constitute "other relief" distinct from nominal damages to dodge the cap) (citing Rhodes v. Stewart, 488 U.S. 1, 4 (1988) (per curiam) (stating a declaratory judgment "will constitute relief, for purposes of § 1988, if, and only if, it affects the behavior of the defendant toward the plaintiff")). Because any declaratory judgment inferred from the district court's orders and judgments here would not affect the behavior of Hopkins and Bakewell toward Keup, Keup is entitled to no more than $1.50 in attorney fees. See id.

### 3. Lack of Success

Hopkins and Bakewell argue the district court abused its discretion in calculating the amount of Keup's attorney fees award. For example, Hopkins and Bakewell point out the district court failed to reduce Keup's attorney fees for his lack of success at trial and his failure to win his complaints about the greeting card and bondage sketchbook incidents. See, e.g., Hensley v. Eckerhart, 461 U.S. 424, 440 (1983) ("We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of . . . attorney's fees[.]"). Because § 1997e(d)(2) caps Keup's attorney fees award at a scant $1.50, we need not reach this argument.

## III. CONCLUSION

We affirm in part, reverse in part, and remand for reduction of the attorney fees award to $1.50.

_____

-11-