IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


PAYNE V. HOPKINS


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


CHRISTOPHER M. PAYNE, APPELLANT,

V.

FRANK X. HOPKINS ET AL., APPELLEES.


Filed May 23, 2017.    No. A-15-1126.


Appeal from the District Court for Lancaster County: KAREN B. FLOWERS and LORI A. MARET, Judges. Affirmed.

Christopher M. Payne, pro se.

Douglas J. Peterson, Attorney General, and James D. Smith for appellees.


MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Christopher M. Payne appeals from the order of the district court for Lancaster County, which dismissed his complaint against the Nebraska Department of Correctional Services (DCS) and three DCS employees--Frank Hopkins, Fred Britten, and Scott Busboom--sued in both their individual and official capacities (collectively DCS officials). For the reasons set forth herein, we affirm.

## BACKGROUND

On April 30, 2014, Payne filed a complaint in the district court against DCS and the DCS officials in their official and individual capacities. Payne alleged that he was an inmate housed at the Tecumseh State Correctional Institution (TSCI) and that he had "produced artwork containing nudity," which was confiscated from him by prison employees in October 2012 and January 2013.

- 1 -

Payne alleged that his numerous requests that the artwork either be returned to him and/or mailed out of the institution were denied by the three DCS officials named as defendants. Payne noted an operational memorandum at TSCI that prohibits the making of items that depict nudity and alleged that other DCS-operated institutions, namely, Lincoln Correctional Center, do not prohibit the production of this type of artwork. Payne alleged that the actions of the three DCS officials (1) violated his First Amendment right to send and receive mail, (2) violated his Fourth and Fourteenth Amendment rights to be free from unlawful seizure and deprivation of ownership interests without due process, and (3) exhibited reckless indifference to his right to send and receive mail by intentionally refusing to allow him to mail the artwork out of TSCI. He also alleged that the operational memorandum could have no other purpose than to suppress the artistic expression of free speech of the inmates housed at TSCI and violated the equal protection clause because other institutions under DCS control do not prohibit inmates from producing artwork containing nudity. Payne sought monetary damages from the three DCS officials, including, punitive damages, injunctive relief enjoining the defendants from "any future and further misconduct of this nature, and for the release of the artwork," and declaratory relief invalidating the operational memorandum, including "those rules or regulations which prohibit Payne from producing artistic drawing depicting nudity or penetration."

Hopkins and Busboom sought dismissal of Payne's complaint as to them in their individual capacities, which motion was granted by the district court on October 18, 2013. Payne's appeal from the October 2013 order, in case No. A-13-961, was dismissed by this court on January 10, 2014, for lack of jurisdiction because the order did not dispose of all claims as to all parties.

On January 12, 2015, the district court granted a similar motion for dismissal filed by Britten. In the orders ruling on the DCS officials' motions to dismiss, the district court found that the DCS officials were entitled to qualified immunity in their individual capacities because Payne, as an inmate, did not have a clearly established constitutional right to possess or mail the artwork at issue.

None of the DCS officials were sued or served with process in their official capacities and, thus, the complaint was dismissed as a matter of law as to the individual defendants in their official capacities for failing to accomplish service within six months of filing.

DCS filed a motion to dismiss for failure to state a claim upon which relief could be granted, which was granted by the district court on November 5, 2015. With respect to DCS, the court found that DCS was not a person subject to suit for damages under 42 U.S.C. § 1983; DCS did not violate Payne's First Amendment rights when it prohibited him from possessing and sending the artwork in question; because Payne did not have a protectable Fourth Amendment right inside his prison cell, he failed to state a claim for a Fourth Amendment violation against DCS when his artwork was confiscated; and because the Constitution does not mandate that a practice permitted at one correctional institution be permitted at all correctional institutions, the lack of regulations similar to the operational memorandum at other correctional institutions did not violate Payne's equal protection rights.

Payne subsequently perfected the present appeal.

ASSIGNMENTS OF ERROR

Payne asserts that the district court erred in finding the DCS officials were entitled to qualified immunity and dismissing the complaint against the DCS officials in their individual capacities.

STANDARD OF REVIEW

A district court's grant of a motion to dismiss is reviewed de novo. *Hill v. State*, 296 Neb. 10, ___ N.W.2d ___ (2017). When reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion. *Id*.

ANALYSIS

Qualified immunity protects government officials acting in their individual capacities from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Potter v. Board of Regents*, 287 Neb. 732, 844 N.W.2d 741 (2014). Qualified immunity consists of two inquiries: (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Payne v. Nebraska Dept. of Corr. Servs.*, 24 Neb. App. 1, 879 N.W.2d 705 (2016). The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Id.* Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law. *Potter v. Board of Regents, supra*. The dispositive inquiry for qualified immunity is whether it would be clear to a reasonable officer in the agent's position that his conduct was unlawful in the situation he confronted. *Payne v. Nebraska Dept. of Corr. Servs., supra*. A government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he or she is doing violates that right. *Carney v. Miller*, 287 Neb. 400, 842 N.W.2d 782 (2014). If a reasonable official could have believed his or her conduct was lawful, the official's conduct does not violate clearly established law. *Id*.

In denying Payne's Fourth Amendment claim, the district court found that the DCS officials were entitled to qualified immunity because Payne's right to possess the artwork was not clearly established. The district court found that the operational memorandum at issue in this case is a preventive measure aimed at maintaining prison security, relying on *Thornburgh v. Abbott*, 490 U.S. 401, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989) (finding prison officials may lawfully censor prison mail detrimental to security, good order and discipline of institution and it is essential that prison officials be given broad discretion to prevent such disorder). Payne does not challenge the court's findings with respect to his Fourth Amendment claim, accordingly, we do not address them further.

The district court found the DCS officials entitled to qualified immunity with respect to Payne's First Amendment claim because Payne's right to possess the artwork was not clearly

established and because the artwork was confiscated as contraband, and his right to mail it out of TSCI was also not clearly established. The court relied on *Smith v. Delo*, 995 F.2d 827 (8th Cir. 1993) (prison regulation requiring outgoing mail addressed to media or clergy be unsealed in prison mailroom and inspected did not violate prisoner's First Amendment rights as it was rationally related to legitimate interest in screening mail for escape plans, contraband, threats, or evidence of illegal activity).

Payne notes precedent holding that, "Outgoing personal correspondence does not generally pose a serious threat to prison order and security. . . . For this reason, a prisoner's personal outgoing mail is unrestricted unless it falls into categories which present a threat to prison order and security, such as, but not limited to, 'escape plans, plans related to ongoing criminal activity, and threats of blackmail or extortion.'" *Leonard v. Nix*, 55 F.3d 370, 374 (8th Cir. 1995), citing *Thornburgh v. Abbott, supra*. Payne argues that the artwork in question does not violate a criminal law or pose a threat to prison security if mailed out of the institution. He argues that he "enjoys the Constitutional right to send mail" and that under the circumstances of this case, his right was clear. Brief for appellant at 7. In so arguing, he relies on *Keup v. Hopkins*, 596 F.3d 899 (8th Cir. 2010).

The inmate in *Keup v. Hopkins* was incarcerated at the Lincoln Correctional Center (LCC) and challenged restrictions on his ability to send and receive mail. One of the incidents at issue in that case was the inmate's attempt to mail certain drawings to his mother, one of which contained a bare-breasted woman and one of which depicted a marijuana leaf. At that time, LCC had an operational memorandum in place that prohibited inmates from manufacturing, possessing, or distributing drawings such as those made by the inmate. The operational memorandum was subsequently amended to ban drawings advocating or likely to incite violence or illegal activity. The inmate filed grievances alleging a violation of his free speech rights, which grievances were denied. The inmate filed an action under 42 U.S.C. § 1983 alleging violation of his First and Fourteenth Amendment rights when he was prohibited from sending the drawings to his mother and requesting compensatory and punitive damages and declaratory and injunctive relief. The defendants asserted that the inmate's request for injunctive relief was moot due to the amendment of the operational memorandum. The inmate subsequently amended his complaint to allege additional claims related to other incidents. The federal trial court granted summary judgment for the defendants, finding that the amendment of the operational memorandum rendered the inmate's requests for prospective injunctive and declaratory relief moot, but rejected the defendants' other defenses. At the conclusion of a jury trial on the issue of the inmate's requests for damages, the trial court directed a verdict in favor of the inmate against the defendants for prohibiting him from mailing his drawings to his mother and another group and awarded nominal damages. The inmate's other claims were either rejected by the trial court or the jury. The trial court subsequently awarded attorney fees to the inmate. The defendants appealed and the issues on appeal were whether the trial court erred in rejecting their claims of mootness with respect to the inmate's monetary damages for violations of rights prior to amendment of the operational memorandum, rejecting their exhaustion of administrative remedies defenses, and awarding attorney fees.

On appeal, the Eighth Circuit found that while amendment of the operational memorandum mooted any claims for prospective injunctive or declaratory relief, it did not deprive the prisoner of the opportunity to seek monetary damages for any violations of his constitutional rights

occurring before the amendment. *Keup v. Hopkins*, 596 F.3d at 903-904. The court also determined that the defendants waived their exhaustion of administrative remedies defense by not reasserting it at trial and that the prisoner, as the prevailing party, was entitled to attorney fees, to which the court applied a statutory cap. 596 F.3d at 904-905.

Payne argues that *Keup v. Hopkins*, 596 F.3d 899 (8th Cir. 2010), shows that his right to mail the drawings at issue in this case was clearly established and would have been known to Hopkins (a defendant in both cases), and that Hopkins and the other DCS officials in this case "did violate this clearly established law." Brief for appellant at 8. Accordingly, Payne argues that the district erred in finding that the DCS officials had qualified immunity with respect to his First Amendment claim. We disagree. The Nebraska Supreme Court has stated, "A case does not need to be directly on point, but existing precedent must have placed the constitutional question beyond debate." *Carney v. Miller*, 287 Neb. 400, 417, 842 N.W.2d 782, 797 (2014), citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011). The appellate opinion in *Keup v. Hopkins, supra*, addresses none of the issues applicable to this case and does not clearly establish Payne's constitutional right to mail the drawings in question. Nor has Payne shown a right to possess the drawings. Maintaining institutional security and preserving internal order and discipline are essential prison goals which may require the limitation of some of a prisoner's constitutional rights. *Meis v. Grammer*, 226 Neb. 360, 411 N.W.2d 355, 356 (1987). Payne has not established that it would be clear to reasonable prison officials in the positions of the DCS officials in this case that their conduct was unlawful. The district court did not err in finding the officials entitled to qualified immunity with respect to Payne's First Amendment claims.

Finally, Payne argues that the district court misinterpreted his claim under the Fourteenth Amendment. In finding that the individual defendants were entitled to qualified immunity under the Fourteenth Amendment, the district court concluded that it was not clearly established that the denial of Payne's right to possess the artwork at his current institution would result in the violation of Payne's rights when he would be able to possess the artwork at a different institution. The district court observed that the Constitution does not mandate that a practice permitted at one correctional institution be permitted at all correctional institutions, relying on *Turner v. Safley*, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987) (when prison regulation impinges on inmates' constitutional rights, regulation is valid if reasonably related to legitimate penological interests) and *Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979) (Due Process Clause does not mandate that practice permitted at one penal institution must be permitted at all institutions).

Payne did not specifically assign error to the district court's interpretation of his Fourteenth Amendment claim; rather, he only assigned error generally to the court's finding of qualified immunity. He does not argue how the finding of qualified immunity was in error as it relates specifically to the Fourteenth Amendment claim. Thus, we need not address this argument further. To be considered by an appellate court, an error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Mock v. Neumeister*, 296 Neb. 376, 892 N.W.2d 569 (2017).

CONCLUSION

The district court did not err in finding the DCS officials were entitled to qualified immunity and dismissing the complaint against the DCS officials in their individual capacities.

AFFIRMED.